Keith BAILEY, Plaintiff,

v.

Ronald A. BROOKS, District Director, Immigration & Naturalization Service, Defendants.

No. C86–1914R.

United States District Court, W.D. Washington, at Seattle.

Dec. 15, 1986.

Karen L. Gilbert, Seattle, Wash., for plaintiff.

Charles Pinnell, Asst. U.S. Atty., Seattle, Wash., for defendants.

## ORDER GRANTING WRIT OF HABEAS CORPUS

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on a motion by petitioner Keith Bailey for a writ of habeas corpus. Having reviewed the motion, together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

### I. FACTUAL BACKGROUND

The following facts are undisputed: Petitioner Keith Bailey is a British citizen who lawfully entered the United States in 1978 as a nonimmigrant intercompany transferee pursuant to 8 U.S.C. § 1101(a)(15)(L) of the Immigration and Nationality Act ("INA"). When his visa as extended expired on March 31, 1980, he remained unlawfully in the United States, living and working in California until the events which precipitated his filing of this action.

In October of 1986, Bailey traveled to Seattle, Washington to visit a friend. Bailey and his friend then drove across the United States border into Canada on October 16, 1986 to visit the friend's sister. On October 17, 1986, Bailey sought readmission to the United States at the port of entry at Blaine, Washington.

The Immigration and Naturalization Service ("INS") concluded that Bailey had no legal basis for entering this country, refused him admission and gave him the option of appearing before an immigration judge in an exclusion proceeding under 8 U.S.C. § 1226 of the INA. Bailey requested an immediate hearing and, pursuant to 8 U.S.C. § 1182(d)(5), also asked to be paroled into the United States pending the hearing. The District Director of the INS denied both requests. Consequently, Bailey remained in Canada from October 17, 1986 until the morning of December 3, 1986, when he was paroled into the United States for the purpose of attending his exclusion hearing scheduled to occur that day in Seattle, Washington.

On December 3, 1986, prior to the commencement of the hearing, Bailey's counsel obtained a continuance from the immigration judge in order to request the District Director to terminate the exclusion proceeding and permit Bailey to continue on parole status in the United States so that he could make a claim for legalization under the amnesty provisions of recently enacted immigration legislation. The District Director denied the request.

That afternoon, Bailey filed a petition for writ of habeas corpus, request for temporary restraining order and request for emergency hearing in this court. After reviewing the documents submitted by Bailey, the court temporarily restrained the INS from incarcerating him or removing him from the court's jurisdiction. On December 5, 1986, the court reviewed briefs and heard oral argument from counsel for both Bailey and the INS concerning his request for a writ of habeas corpus permitting him to return to his home and work in California and further permitting him to remain in the United States until he can apply for legalization of his status under new immigration law.

### II. LEGAL ARGUMENT

This case raises an issue of first impression arising out of legislation enacted less than a month ago. On November 6, 1986, the President signed into law the Immigration Reform and Control Act of 1986 ("IRCA"). Among the major changes in immigration law wrought by the IRCA is one granting amnesty to all aliens who can prove continuous illegal residence in the United States since before January 1, 1982. Pursuant to Title II of the new law, aliens meeting the requirements for amnesty can apply for adjustment of their status to that of lawfully admitted temporary residents under a legalization program to be established and administered by the INS. Eighteen months after such an adjustment of status, aliens can apply for permanent residency in the United States.

One of the things which an alien seeking legalization must prove is continuous physical presence in the United States since the date of enactment of the IRCA. Section 245A(a)(3)(A). However, "brief, casual,

and innocent absences from the United States" are not deemed sufficient to break the continuity of physical presence in this country. Section 245A(a)(3)(B). The IRCA, section 245A–(a)(3)(C), also provides that the new legislation shall not be construed as "authorizing an alien to apply for admission to, or to be admitted to, the United States in order to apply for adjustment of status."

Based on the facts now before the court, there is no question that, barring the refusal of the INS to readmit Bailey to the United States on October 17, 1986 and thereafter until December 3, 1986, Bailey would have been *prima facie* eligible to apply for adjustment of his status under Title II of the IRCA. However, when Bailey requested an extension of his parole status in the United States in order to apply for legalization under the IRCA, the District Director denied the request on the grounds that, contrary to the requirements of section 245A(a)(3) of the IRCA, Bailey was not in the United States on the date of enactment; that he was not continuously physically present in the United States after the date of enactment; and that he was seeking to enter the United States for the purpose of applying for adjustment of status. The District Director concluded, therefore, that Bailey was not *prima facie* eligible to apply for legalization.

The District Director has discretionary authority to parole aliens into the United States under 8 U.S.C. § 1182(d)(5) and the attendant regulations in 8 C.F.R. § 212.5. As the District Director acknowledges, this court can review the exercise of that authority to determine whether an abuse of discretion has occurred. Having carefully considered the circumstances of this case

as well as the arguments of counsel and the language of the new legislation, the court concludes that the District Director abused his discretion in finding that Bailey is not eligible to apply for legalization of his status and, as a result, denying Bailey extended parole in order to permit him to apply.

The District Director relies on section 245A(a)(3)(A), the provision requiring that an alient applying for legalization establish his or her continuous physical presence in the United States since the enactment of the IRCA. As the District Director stresses, Bailey was in Canada on November 6, 1986 and thereafter until December 3, 1986. However, it is obvious and undisputed that the sole reason for Bailey's absence from the country and consequent inability to meet the requirements of section 245A(a)(3)(A) was the District Director's categorical refusal to allow his readmission into the United States on any terms.[1]

Bailey in turn points to the language of section 245A(a)(3)(B), which provides that "brief, casual, and innocent absences from the United States" shall not be deemed to interrupt an alien's maintenance of continuous physical presence in this country for purposes of legalization under the IRCA. He argues that his overnight trip to Canada was just such a "brief, casual, and innocent absence." *Compare Rosenberg v. Fleuti,* 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963), from which the language of section 245A(a)(3)(B) was derived. In *Fleuti,* the United States Supreme Court held that a permanent resident's trip to Mexico lasting only a few hours was so "innocent, casual, and brief" that it did not constitute a meaningful interruption of his permanent residency in

---

1. In his brief at p. 9, Bailey argues that "his 'absence' from the United States between November 6, 1986 (the day of enactment of the IRCA) and December 3, 1986 (the date he was finally 'paroled' in by the District Director) was a forced absence purposefully imposed on him by the District Director in order to deprive him of the ability to make a claim for amnesty under the IRCA once it was signed by the President." The court has not held an evidentiary hearing in this case and does not make any factual determination concerning the motiva-

tion for the District Director's decision to require Bailey to remain outside the United States until the morning of his scheduled hearing in Seattle, Washington. However, the court will note that the factual allegations which Bailey set forth, and which the INS did not in any way challenge, do tend to support Bailey's position that the District Director acted knowingly with the intent to render Bailey incapable of applying for legalization of his status under the new law.

the United States. This court agrees that, under the circumstances of the instant case, Bailey's intended overnight absence from the United States would certainly fall within the statutory language of section 245A(a)(3)(B).

In his brief to this court at p. 8, the District Director states that "it might be arguable that if he had departed the United States *after* enactment of the I.R.C.A., he would not be subject to exclusion proceedings on his return due to the language in section 245A(a)(3)(B)." In other words, the District Director concedes that, pursuant to the IRCA, Bailey arguably should have been allowed to return to the United States and to apply for legalization when the procedures for doing so have been established.

But the District Director relies on the fact that Bailey left this country and sought readmission approximately three weeks before the IRCA became law. Although this argument may have some technical merit, the equities inhering in Bailey's situation and in the IRCA require the court to reject it.

First, the amnesty provisions of the IRCA are clearly remedial in nature; therefore, they must be broadly construed in order to effectuate the congressional purpose of allowing all illegal aliens who can prove continuous extended residence in this country to apply for legalization of their status. Second, the District Director was fully aware of the impending legislation. By October 17, 1986 when Bailey first applied for readmission to the United States, the House of Representatives had passed the IRCA and by the end of October, 1986 when Bailey formally asked the District Director to parole him into the United States through his attorney, the IRCA awaited only the President's signature before becoming law. Third, there is precedent for ameliorating the harsh, inequitable result of strictly construing immigration law in this sort of situation. *See Fleuti, supra.*

Finally, the District Director argues that extending Bailey's parole to allow him to apply for legalization would contravene the IRCA in that it specifically prohibits an alien from seeking admission to the United States in order to apply for adjustment of his or her status. Section 245A(a)(3)(C). The court is hindered in its analysis of this and other sections of the IRCA by the lack of any regulations, precedent or other explanatory materials. Nevertheless, the court is confident that the language of this section does not apply to Bailey's situation. When he presented himself at the border in Blaine, Washington on October 17, 1986, Bailey was not seeking readmission to the United States to apply for legalization, but simply to return to his work and residence in California after a "brief, casual, and innocent absence." Thereafter, he persisted in his attempts to return to his home, only to be met with the District Director's absolute refusal to parole him into the United States until the date of his exclusion hearing. Based solely on this refusal, he has been placed in the position of requesting extended parole in order to permit him to apply for legalization rather than going through exclusion proceedings.

In conclusion, the court finds that the District Director abused his discretion in deciding that Bailey is not eligible to apply for legalization under the newly enacted IRCA. His overnight trip to Canada in mid-October of 1986 was unquestionably intended to be a "brief, casual, and innocent absence" from the United States within the meaning of section 245A(a)(3)(B). The fact that he actually spent some 50 days outside of the United States is the forced result of the District Director's decision to deny him parole and does not, in this court's mind, transform his intended brief absence into a more lengthy one breaking the continuity of his physical presence in the United States and making him ineligible to apply for legalization.

Therefore, the court GRANTS petitioner Bailey's petition for a writ of habeas corpus. Pursuant to this writ, Bailey is free to return to California and his work there unless the District Director has some other reason for detaining him. This writ shall be effective until Bailey has applied for and received a determination concerning legalization of his status under the program to

be established by the INS pursuant to Title II of the IRCA.

IT IS SO ORDERED.