**John RUGINSKI and Ines E. Franco Zapata, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 88–1167.

United States Court of Appeals, First Circuit.

Heard March 4, 1991.

Decided Aug. 9, 1991.

Peter A. Allen with whom Michael A. Sen, Boston, Mass., was on brief, for petitioners.

Carl H. McIntyre, Office of Immigration Litigation, Civ. Div., Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen., and David J. Kline, Asst. Director, Washington, D.C., were on brief, for respondent.

Before CAMPBELL and CYR, Circuit Judges, and COFFIN, Senior Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Petitioner, Ines Franco–Zapata Ruginski, a native and citizen of Colombia, seeks review of a decision by the Board of Immigration Appeals, dismissing her appeal from an order of deportation. This court initially granted a stay of its consideration of the review petition pending the resolution of Ruginski's application for legalization under Section 245A of the Immigration and Reform Control Act (IRCA), 8 U.S.C. § 1255a. Her application for legalization was denied on January 11, 1991. Her challenge to the original order of deportation is, at this stage, premised entirely on her challenge to the Legalization Appeals Unit's (LAU) rejection of the legalization application. We affirm.

## I.

Ines Franco–Zapata Ruginski entered the United States near Brownsville, Texas on March 11, 1986, without presenting herself for inspection.[1] On June 17, 1986, the Immigration and Naturalization Service (INS) commenced deportation proceedings against Ruginski by issuing her an Order to Show Cause, charging her with deportability under Section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2), based on her illegal entry into the United States. At her deportation hearing, she admitted the allegations in the Order to Show Cause; however, she moved for administrative closure of the case or, alternatively, for four months of voluntary departure, to permit her to apply for legalization under the Immigration and Control Act of 1986.

Following a hearing, the immigration judge denied Ruginski's request to close the case and granted her thirty days of voluntary departure rather than the requested four months. Ruginski appealed the decision to the Board of Immigration Appeals (BIA). The BIA summarily dismissed the appeal as frivolous, stating there was no requirement that the immigration judge hold a case in abeyance pending a legalization application. Moreover, since the judge granted thirty days of voluntary departure, the denial of Ruginski's request for four months was unreviewable pursuant to 8 C.F.R. § 3.1(b)(2).

On February 26, 1988, Ruginski petitioned this court for review of the BIA's dismissal of her appeal to it from the order of deportation. On March 25, 1988, one month later, Ruginski's application for temporary residence was accepted by the INS Regional Processing Facility (RPF), and a work authorization card was issued to her. On January 27, 1989, Ruginski requested this court to stay its determination of the petition for review pending a final administrative determination of her legalization claim. This court granted the motion for stay on March 8, 1989, requiring petitioner and the INS to file status reports concerning the progress of Ruginski's legalization application. The RPF ultimately denied Ruginski's application, finding that the documentary evidence she presented was insufficient to support her claim of continuous residence since January 1, 1982. The RPF also found that Ruginski was excludable under section 212(a)(23) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(23), because of her arrest for a crime involving drug trafficking. Ruginski appealed the RPF decision to the LAU on January 17, 1990. On appeal, she argued that the RPF's reliance on her cocaine trafficking arrest was improper; she informed

---

**1.** John Ruginski, a native and citizen of the United States, represented petitioner during her deportation proceedings. He and Franco–Zapata were married in March 1987. John Ruginski was not a party to the deportation proceedings or the legalization proceedings at the administrative level in this case. Thus, he is not a proper party in either the deportation petition for review or the legalization petition for review pending before this court.

Our references to "Ruginski" relate to Ines Franco–Zapata Ruginski and not her husband.

the LAU that she had been acquitted of that charge in July 1990. She also disputed the RPF's finding that she had failed to provide sufficient proof of continuous residence since January 1, 1982.

The LAU denied Ruginski's claim for legalization on January 11, 1991. The LAU found that her claim of continuous residence was not supported by sufficient evidence. Specifically, the LAU concluded that none of the affidavits that Ruginski offered in support of her legalization claim established her continuous residence. Moreover, the LAU found it significant that Ruginski's claim was supported principally by affidavits rather than by "contemporaneous documentation" such as paycheck stubs or W–2 forms. The LAU also cited her trip to Colombia in September 1983, which lasted longer than the 45–day maximum under the statute. The LAU refused to exclude this trip, during which Ruginski gave birth to her baby, under the "emergent reasons" exception, 8 C.F.R. § 245a.1(c), finding that when she left the United States, she had not intended to return within the statutory 45–day period.

As required by this court's order granting a stay of her petition for review, Ruginski informed this court of the denial of her legalization application within ten days of her receipt of notice of the decision. Ruginski did not, at that time, seek review of the LAU decision; and the instant petition for review was scheduled for argument. On March 3, 1991, at argument before us, Ruginski's counsel conceded that her original challenge to the order of deportation had become moot and sought review of the denial of her legalization application. We ordered Ruginski to file a petition for review of her legalization decision, and we established an expedited briefing schedule in conjunction with the petition. We specifically requested the petitioner and the INS to address this court's jurisdiction to review the legalization claim as well as the merits of that claim. We hereby affirm the LAU's denial of Ruginski's application for legalization; the petition for review is denied.

## II.

### A. *Jurisdiction*

Section 1255a(f)(4)(A) provides that "[t]here shall be judicial review of [a denial of an application for legal status] only in the judicial review of an order of deportation under section 1105a of this title." 8 U.S.C. § 1255a(f)(4)(A). In the usual case, a determination of the application for legalization would precede the order of deportation and the applicant would then request review of the denial of her legalization claim in the context of her petition for review of a deportation order. However, nothing in the Act prevents an alien who has been the subject of an order to show cause issued prior to the Act from submitting an application for legalization under the Act. *Cf.* 8 U.S.C. § 1255a(a)(1)(B) (providing a separate deadline for an alien who is the subject of an order to show cause during the application period).

■ This court granted a stay of Ruginski's petition to review the order of deportation, pending a final administrative decision on her legalization claim. Although the grant of the stay rendered moot her original challenge to the order of deportation,[2] the judicial review of an order of deportation "includes all matters on which the validity of the final order is contingent, rather than only those determinations actually made at the [deportation] hearing." *INS v. Chadha*, 462 U.S. 919, 938, 103 S.Ct. 2764, 2777, 77 L.Ed.2d 317 (1983). Had the LAU granted her application for legalization, her legalization would provide an affirmative defense to deportation and would be reviewable in that context. Thus, because Ruginski's deportation appeal was still pending when she petitioned for review of her legalization claim, we believe that

---

**2.** Her original petition for review was based on the immigration judge's failure to close her case in order to allow her to apply for legalization and on her challenge to the district director's denial of an immediate relative visa requested by her husband on her behalf. She has conceded that her original challenge to the deportation order is moot and does not raise these arguments in her petition.

this court has appellate jurisdiction to consider Ruginski's challenge to the denial of her application for legalization in the context of our review of the deportation order.[3]

### B. *The Denial of the Petition for Legalization*

The Immigration Reform and Control Act of 1986, 8 U.S.C. § 1255a, provides for the adjustment of the status of certain aliens who entered the United States prior to January 1, 1982. Under the Act, the status of a qualifying applicant may be adjusted to that of a person admitted for temporary residence, a necessary step toward application for adjustment to permanent residence status. On January 14, 1988, Ines Franco–Zapata Ruginski submitted a timely application for adjustment of her status under the program.

The Act provides that "[t]he alien must establish that he entered the United States before January 1, 1982, and that he has resided continuously in an unlawful status since such date and through the date the application is filed...." 8 U.S.C. § 1255a(a)(2)(A). Under applicable regulations, to qualify as having "resided continuously" in the United States, the alien must establish that:

> [n]o single absence from the United States has exceeded forty-five (45) days, and the aggregate of all absences has not exceeded one hundred and eighty (180) days between January 1, 1982 through the date the application for temporary resident status is filed, unless the alien can establish that due to emergent reasons, his or her return to the United States could not be accomplished within the time period allowed.

8 C.F.R. § 245a.1(c)(1)(i). In Ruginski's case, the RPF found that she had not met her burden of establishing continuous residence. The LAU affirmed this determination and, in addition, pointed to a specific period from September 1983 to April 1984

in which she resided outside the United States for a period well in excess of 45 days. In considering Ruginski's challenge to the LAU determination, we note that the Act provides for only very limited judicial review in this situation. Review of a final legalization order "shall be based solely upon the administrative record ... and the findings of fact and determinations contained in such record shall be conclusive unless the applicant can establish ... that the findings are *directly contrary to clear and convincing* facts contained in the record considered as a whole." 8 U.S.C. § 1255a(f)(4)(B) (emphasis added).

Ruginski's present arguments to us concern the LAU's general determination that her evidence, consisting largely of affidavits, was insufficient to establish her continuous residence, as well as the LAU's refusal to include her trip to Colombia to give birth to her baby within the "emergent reasons" exception to the 45-day limit. First, with respect to the sufficiency of her evidence, Ruginski argues that the LAU misapplied the preponderance of the evidence standard governing the alien's burden of proof for establishing continuous residence. She points to various affidavits submitted in support of her petition and disputes the LAU's conclusions drawn therefrom. For example, with respect to the affidavit submitted by Humberto Lopez, Ruginski argues that the LAU attached too much significance to the fact that her passport was issued in Colombia during the period of time Lopez states that she was living with him in the United States. She points out that her presence in Colombia does not undermine the credibility of the Lopez affidavit since Lopez states only that she lived with him "off and on."

■ Contrary to the LAU conclusion, Ruginski insists that, taken as a whole, the affidavits submitted lead to a reasonable inference that she was working in the United States during the requisite time period and therefore that she could not have resided outside the United States. Although

---

**3.** We note that the INS did not challenge the jurisdiction of this court to consider Ruginski's petition for review of the legalization decision. Indeed, in response to this court's request that both parties address the jurisdictional issue, the INS argued affirmatively in support of the court's jurisdiction to review the LAU decision.

Ruginski's interpretation of her own evidence may conceivably be plausible, the mere offer of a plausible alternative interpretation does not establish that the LAU's findings are "directly contrary to clear and convincing facts contained in the record." *Id.* Under the very narrow scope of judicial review established in the statute, it is not sufficient for the applicant simply to show that different conclusions might possibly be drawn from the evidence submitted in support of the application.

Apart from disputing the LAU's interpretation of the affidavits supporting her application, Ruginski argues that the LAU improperly rejected her application because her supporting evidence consisted primarily of affidavits rather than contemporaneous documentary evidence.[4] There is no indication, however, that the LAU rejected her application only because she lacked contemporaneous documentation. On the contrary, the memorandum of the decision indicates that the LAU reviewed the affidavits in detail to determine whether they were sufficient to establish her continuous residence. The LAU merely noted in support of its conclusion of evidentiary insufficiency that her claim was "supported chiefly by affidavits rather than contemporaneous documentation." The LAU's determination that, on balance, the character of the evidence weighed against the applicant is consistent with 8 C.F.R. § 245a.2(d)(6) which provides that "[i]n judging the probative value and credibility of the evidence submitted, greater weight will be given to the submission of original documentation." *Id.*

The second argument Ruginski makes on appeal concerns the LAU's treatment of her absence from the United States during the period September 1983 to April 1984. This period exceeded the 45–day maximum established by the Act. It would, therefore, render Ruginski ineligible for a change in status unless the stay fell within the "emergent reasons" exception. Applicable regulations require that no absence from the United States exceed 45 days

unless "the alien can establish that due to emergent reasons the return, his or her return to the United States could not be accomplished within the time period allowed; the alien was maintaining residence in the United States; and the alien's departure from the United States was not based on an order of deportation." 8 C.F.R. § 245a.1(c)(1)(i). This regulation is designed to avoid penalizing aliens who leave the country planning a brief trip that is subsequently lengthened for reasons not foreseen.

■ The LAU concluded that Ruginski's trip to Colombia in September 1983 to give birth to her baby did not fall within the "emergent reasons" exception. Ruginski claims that she suffered unexpected complications relating to her pregnancy and could not return to the United States before April 1984. Nevertheless, the relevant issue under the regulation is whether Ruginski, when leaving the United States, reasonably expected to return within the 45–day time limit. If she did not, the fact that her stay was lengthened by complications is irrelevant. The exact date of Ruginski's departure for Columbia in September 1983 is not contained in the administrative record. As her baby was born on October 3, 1983, she may have left the United States as many as thirty-three days prior to delivery date. Based on the evidence in the record, the LAU concluded that, "[g]iven the distance from New York to Colombia, and the stress of childbirth and recovery, it is doubtful the applicant actually intended to return to the United States within 45 days."

Here again petitioner has failed to point to specific evidence in the administrative record which contradicts the conclusions of the LAU. While it may have been possible for her to have completed her trip to Colombia within the 45–day period, the LAU's conclusion that she intended otherwise is not unreasonable nor contrary to the evidence in the record. Accordingly, we do

---

4. In *Loe v. Thornburg,* No. 88–7363 (S.D.N.Y., Feb. 2, 1989), the INS entered a stipulation pursuant to which it agreed to reopen cases in which the RPF had denied legalization applications because they lacked contemporaneous documentation.

not find any basis for disturbing the findings of the LAU. Moreover, we note that, even apart from this absence, her failure to establish continuous residence within the United States renders her ineligible for the change in status.

### III.

For the foregoing reasons, we conclude that petitioner's challenge to the denial of her application for legalization is without merit. We, therefore, affirm the order of the LAU denying Ruginski's application for legalization and, consequently, must deny the petition for review. As Ruginski concedes, her original challenge to the order of deportation was rendered moot by the stay of that order granted by this court. Thus, her current challenge to that order, resting entirely on her legalization application, must also fail in light of our affirmance of the LAU's denial of her application.

*Petition for review denied.* Costs to appellees.