Antonio **CAMPOS**, Plaintiff,

v.

Richard **SMITH**, District Director of the Immigration and Naturalization Service, Defendant.

No. C91–283R.

United States District Court, W.D. Washington.

March 26, 1991.

Robert Pauw, Northwest Immigrant Legal Services, Seattle, Wash., for plaintiff.

Chris Pickrell, Asst. U.S. Atty., Seattle, Wash., for defendant.

## ORDER CLARIFYING IMMIGRATION STATUS

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on plaintiff's motion for a preliminary injunction and writ of habeas corpus. Having reviewed the matter, together with all documents in support and in opposition, and being fully advised, the court finds and rules as follows:

## I. FACTUAL BACKGROUND

Petitioner Antonio Campos is a Mexican national who unlawfully entered the United States during November of 1981 and who has applied for legalization as a temporary resident under the Immigration Reform and Control Act of 1986 ("IRCA"), 8 U.S.C. § 1255a, *et seq.* He was granted a work permit pursuant to 8 U.S.C. § 1255a(e)(2)(B). Petitioner's Brief, Exhibit A (letter from Robert Pauw to Richard Smith, INS District Director, Feb. 13, 1991). Although petitioner's initial legalization application was denied, his appeal of that denial is pending. Response to Petitioner's Clarification of Status at 1–2.

On November 8, 1990, Mr. Campos was working in a field adjacent to the Canadian border near Lynden, Washington. Rain fell for much of the day and the field was quite muddy when Mr. Campos finished work at about 5 p.m. While driving home through the field, Mr. Campos and four coworkers decided to turn onto a paved road. Unbeknownst to Mr. Campos, turning onto the paved road took him and his companions across the Canadian border. Shortly thereafter, they were detained by Canadian immigration officials. On November 14, 1990, after being released by Canadian authorities, Mr. Campos attempted to return to the United States but was turned away at the border by U.S. immigration officials because he did not have in his possession documents showing that he had a right to be in the United States. Mr. Campos states that he made another attempt to return to the United States on January 24, 1991, but again was turned away. Declaration of Antonio Campos, para. 4.

On January 31, 1991, a Canadian immigration judge found that Mr. Campos' entry into Canada had been unintentional. He gave Mr. Campos until February 21, 1991, to depart voluntarily from Canada. Petitioner, through counsel in the United States, attempted several times to get the Immigration and Naturalization Service ("INS") District Director to permit him to return to this country. His requests were denied.

As Mr. Campos was unable to gain permission to enter the United States by February 21, the Canadian authorities made arrangements to deport Mr. Campos to Mexico on February 28, 1991. On February 27, 1991, petitioner filed a motion for a temporary restraining order and a petition for a writ of habeas corpus, asking this court to order the INS to permit Mr. Campos to return to the United States and resume the immigration status he had prior to November 8, 1990. This court granted petitioner's ex parte motion on February 28 shortly before petitioner's plane was to leave Canada, ordered the defendant to admit Mr. Campos to the United States and set a hearing on the petition for a writ of habeas corpus for March 4, 1990.

The hearing was vacated after the INS, by way of administrative parole, readmitted petitioner to the United States on February 28 and agreed to resume processing of his application for legalization upon request of petitioner's counsel. INS' Response/Return at 1–2. Petitioner subsequently asks this court to clarify his status, and the INS, contending that the grant of administrative parole returned petitioner to

essentially the same immigration status he had before November 8, 1990, asks this court to dismiss the action as moot.

## II. DISCUSSION

■ Following a brief, casual, innocent absence from the United States, an applicant for legalization is entitled to return to the United States to pursue his application. *Bailey v. Brooks*, 688 F.Supp. 575 (W.D.Wash.1986). Permission from the INS, advance parole, is not necessary for such a departure. *Catholic Social Services, Inc. v. Ed Meese III*, 685 F.Supp. 1149 (E.D.Cal.1988) (holding unconstitutional INS regulations requiring advance parole).

■ As was determined through this court's issuance of a temporary restraining order, Mr. Campos' inadvertent turn into Canada to escape driving on the muddy field in which he was working was clearly a brief, casual, innocent absence. The extended duration of the absence was created by the INS, not by Mr. Campos, and does not turn Mr. Campos' absence into one that would interrupt his continuous physical presence in the United States as required under IRCA, 8 U.S.C. § 1255a(a)(3)(B).

The only remaining point of contention between Mr. Campos and the INS is what immigration status Mr. Campos now holds. The government maintains that as Mr. Campos is in the United States and will be permitted to pursue his application for legalization upon written request of counsel, he has essentially the same status he had prior to November 8, 1990, and has been granted all the relief to which he is entitled. The government further contends that any determination of petitioner's status by this court would be purely advisory.

On the other hand, Mr. Campos contends that there is a distinct difference between the status he has now, as a "parolee," and that which he had prior to November 8, 1990, as an applicant for legalization.

The court agrees with Mr. Campos that his immigration status now is significantly different from his immigration status prior to November 8, 1990. Furthermore, as Mr. Campos originally requested to return to the United States and *resume* the immigration status he had prior to November 8, 1990, a clarification of his current status by this court would not be purely advisory.

As a parolee, petitioner is subject to exclusion proceedings rather than deportation proceedings should the INS decide to expel him from the country if his application for legalization is ultimately denied. *See* 8 U.S.C. § 1182(d)(5)(A). As an applicant for legalization, Mr. Campos would be entitled to deportation proceedings if his application for legalization were denied. *See* 8 U.S.C. § 1255a(e)(2)(A).[1] There are considerable procedural protections available in deportation proceedings that are not available in exclusion proceedings. *See Landon v. Plasencia*, 459 U.S. 21, 25–26, 103 S.Ct. 321, 325–326, 74 L.Ed.2d 21; *Maldonado–Sandoval v. INS*, 518 F.2d 278, 280 n. 3 (9th Cir.1975).

The determination of whether Mr. Campos should be considered a parolee hinges on whether his February 28, 1991, return to this country can be termed an "entry" for immigration purposes. Only those aliens "entering" the United States are subject to exclusion proceedings. *Landon v. Plasencia*, 459 U.S. 21, 28, 103 S.Ct. 321, 326, 74 L.Ed.2d 21 (1982); *Ramirez–Durazo v. INS*, 794 F.2d 491 (9th Cir.1986). An entry is any coming into the United States by an alien, except where the alien has made a brief, casual, innocent departure from the United States and is seeking to return. *Rosenberg v. Fleuti*, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963) (interpreting 8 U.S.C. § 1101(a)(13)).

The government argues that the *Fleuti* decision's use of the "brief, casual and innocent" absence doctrine to create an exception to an alien having made an "entry" applies only to permanent resident aliens. The government further argues that the "brief, casual and innocent" absence test in the context of applicants for legalization is

---

1. Under 8 U.S.C. § 1255a(e)(2)(A), deportation proceedings are stayed while a legalization application is pending.

used only for determining continuous residence, one of the prerequisites for legalization. 8 U.S.C. § 1255a(a)(3)(B).

Although both the *Fleuti* decision and 8 U.S.C. § 1101(a)(13) make reference to the entry exception only in connection with permanent resident aliens, it is clear that both the case law and the statute focus on the potential loss of important rights for aliens who inadvertently leave the country but are considered to have made an "entry" upon their return, thus subjecting them to exclusion rather than deportation proceedings. *See Fleuti*, 374 U.S. at 453–59, 83 S.Ct. at 1807–10; *Delgadillo v. Carmichael*, 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17 (1947); *DiPasquale v. Karnuth*, 158 F.2d 878 (2d Cir.1947); H.R.Rep. No. 1365, 82d Cong., 2d Sess. 32 (1952); S.Rep. No. 1137, 82d Cong., 2d Sess. 4 (1952), U.S.Code Cong. & Admin.News 1952, p. 1653. The Fourth Circuit has used this rationale to apply the *Fleuti* doctrine entry exception in the case of a nonimmigrant business visitor who had applied for an adjustment of status. *Joshi v. INS*, 720 F.2d 799 (4th Cir. 1983) (citing 8 C.F.R. § 245.2(a)(3).

The legalization program established by IRCA provides applicants with important rights, and applicants for legalization clearly occupy a protected position in the United States during the period that they are seeking an adjustment of status. Thus, the rationale for applying the entry exception to permanent resident aliens also applies to legalization applicants who make a brief, innocent, casual departure from the United States. Such a departure does not subject the aliens to the consequences of an "entry" upon their return.

NOW, THEREFORE, petitioner's immigration status is determined to be that which he held prior to November 8, 1990. He is entitled to all of the rights and protections afforded any other applicant for legalization under IRCA and shall not be considered a parolee.