Abdul Hameed KASBATI, Petitioner,

v.

DISTRICT DIRECTOR OF the IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 92 C 5522.

United States District Court,
N.D. Illinois, E.D.

Oct. 23, 1992.

Keil Marquis Larson, Stern & Larson, Chicago, Ill., for plaintiff.

James G. Hoofnagle, Jr., Asst. U.S. Atty., United States Attorney's Office, Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Abdul Kasbati ("Kasbati") has petitioned this court for a writ of habeas corpus.[1] For the reasons set forth below, his petition is denied.

1. He has also moved for release from custody pending the outcome of that petition. Since the parties have discussed the merits of the underlying petition in their briefs, and in the interests of judicial economy, we will rule directly on the habeas corpus petition.

## I. Standard of Review

■ Kasbati challenges the Immigration and Naturalization Service's ("INS") construction of the Immigration and Nationality Act ("INA"), as amended by the Immigration and Reform Control Act of 1986 ("IRCA"). In construing a statute, this Court must abide by statutory intent. However, if a statute is silent on its proper construction, or contains an ambiguity, this Court must defer to agency interpretation, provided that that interpretation is consistent with the language and purpose of the statute. *See Young v. Community Nutrition Inst.*, 476 U.S. 974, 981–82, 106 S.Ct. 2360, 2364–65, 90 L.Ed.2d 959 (1986). We may even defer to an agency if "the agency construction was [not] the only one it permissibly could have adopted ... or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

## II. Factual Background

Kasbati, a native of Pakistan, has resided in the United States since 1981. In March, 1990, he successfully applied for class membership in a class action lawsuit, *Catholic Social Services v. Meese*, 685 F.Supp. 1149 (E.D.Cal.1988), *aff'd*, *CSS v. Thornburgh*, 956 F.2d 914 (9th Cir.1992), challenging the INS' implementation of the Amnesty Program. The plaintiff class prevailed and Kasbati received a work authorization permit from the INS, while the agency appealed. Meanwhile, Kasbati applied for lawful temporary resident status pursuant to § 245A of the Immigration and Nationality Act.

On February 28, 1992, Kasbati left the United States to go to Pakistan and care for his sick sister. While he was abroad, his work authorization permit expired. On March 14, 1992, he returned to the United States and presented himself for inspection before the INS at Chicago's O'Hare Airport. The examining official refused to allow Kasbati into the country, commenced exclusion proceedings against him, and detained him under § 235(b) of the Immigration and Nationality Act. 8 U.S.C. § 1225(b).[2]

Kasbati went before the Immigration Law Judge and moved to terminate the exclusion proceedings, arguing that a casual, brief, and innocent excursion outside the country does not subject an applicant for legalization to exclusionary proceedings. On March 27, 1992, the Immigration Judge denied this motion, ruling that Kasbati's absence was not casual, brief, and innocent under INS regulations,[3] and, therefore, he was properly subject to exclusionary proceedings. Kasbati then appealed to the United States Board of Immigration Appeals, which affirmed the Immigration Judge's decision on the grounds that under INS regulations, an applicant for temporary legal status must obtain advance parole in order to be readmitted to the United States.

## III. Discussion

The INS claims that Kasbati is excludable on three separate grounds. The government asserts that the petitioner 1) entered the United States without a valid unexpired immigrant visa,[4] 2) sought to enter the United States to perform skilled or unskilled labor without valid labor certification,[5] and 3) sought to enter the country by fraud or by wilfully misrepresenting

---

**2.** This section permits an examining immigration officer to detain any alien who does not appear to be clearly and beyond a doubt entitled to land. *Id.*

**3.** In reaching this conclusion, the Immigration Judge rejected the holding in *CSS v. Meese* that the INS improperly restricted casual, brief, and innocent absences to those absences approved by the INS through the advance parole procedure.

**4.** *See* 8 U.S.C. § 1182(a)(7)(A)(i), § 212(a)(7)(A)(i) of the Immigration and Nationality Act.

**5.** *See* 8 U.S.C. § 1182(a)(5)(A)(i), § 212(a)(5)(A)(i) of the Immigration and Nationality Act.

a material fact.[6] The petitioner does not contend that these grounds are incorrect. Instead, he argues that because his was only a casual, brief, and innocent excursion, under *Rosenburg v. Fleuti*, 374 U.S. 449, 462, 83 S.Ct. 1804, 1809, 10 L.Ed.2d 1000 (1963), and by the logic of *CSS v. Meese*, 685 F.Supp. 1149 (E.D.Cal.1988), *aff's sub nom., CSS v. Thornburgh*, 956 F.2d 914 (9th Cir.1992), there was no meaningful absence and, thus, no "entry." Without an entry, Kasbati concludes, he is not properly subject to exclusionary proceedings.

### A. The *Fleuti* Doctrine

■ The *Fleuti* doctrine, as it is called, states that "an innocent, casual, and brief excursion by a resident alien outside this country's borders may not have been 'intended' as a departure disruptive of his resident alien status and therefore may not subject him to the consequences of an 'entry' into the country on his return." *Fleuti*, 374 U.S. at 462, 83 S.Ct. at 1812. The *Fleuti* doctrine, however, applies only to lawful resident aliens.[7] A "lawful resident alien," in turn, is an alien who has been "lawfully accorded the privilege of residing permanently in the United States." 8 U.S.C. § 1101(a)(20).[8] Here, Kasbati is not a lawful resident alien, but is rather an applicant for temporary legal residency. Moreover, Kasbati's membership in the *CSS* class action does not confer lawful permanent resident status on him.[9] As

such, the *Fleuti* doctrine does not apply to him, and his casual absence may therefore create an entry subjecting him to exclusionary proceedings.

### B. The Validity of 8 C.F.R. § 245a.2(m)(1)

■ Kasbati argues, alternatively, that Congress did not intend a trip such as the one he took to create an entry subjecting him to exclusionary proceedings. He argues that the same reasoning which led the District Court in *CSS v. Meese* to invalidate the INS' interpretation of "a casual, brief, and innocent absence," should lead this Court to invalidate the INS regulation prohibiting readmission to applicants for temporary legal residence who fail to obtain advance parole before leaving the country for a casual, brief, and innocent departure.[10]

In *CSS v. Meese*, the court addressed the validity of an INS regulation designed to enact § 1255a(a)(3) of IRCA. § 1255a(a)(3) states that applicants for legalization must have been continuously physically present in the United States since November 6, 1986 in order to have their status changed. The statute, however, expressly provides that brief, casual, and innocent absences from the country will not interrupt this presence. 8 U.S.C. § 1255a(a)(3). The INS issued a regulation declaring that a brief, casual, and innocent absence is one that is

---

6. *See* 8 U.S.C. § 1182(a)(6)(C)(i), § 212(a)(6)(C)(i) of the Immigration and Nationality Act.

7. This is not an arbitrary demarcation. In § 101(a)13 of the Immigration and Nationality Act, Congress stated that

the term "entry" means any coming of an alien into the United States ... except that an alien having a *lawful permanent residence* in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place in an outlying possession was not voluntary.

8 U.S.C. § 1101(a)(13) (emphasis added). The statute, then, restricts the application of the *Fleuti* doctrine.

8. We do not find Kasbati's attempt to splice together the definition of "permanent" and the definition of "resident" persuasive. The statute quite clearly defines what constitutes a lawful permanent resident. That is the definition we will use here.

9. The court order entered in *CSS v. Meese* merely provides that class members who have applied for temporary legal residency will be treated in accordance with INA § 1255a(e)(2). That is, an applicant will not be deported and will be issued work authorization permits.

10. This court, of course, is not bound by the District Court's decision in *CSS v. Meese*. However, because of the thoughtfulness of the opinion and the gravity of a habeas corpus petition, we will explore the relevant implications of that decision.

authorized by advance parole. 8 C.F.R. § 245a.1(g).

In *CSS v. Meese*, the court invalidated the INS' interpretation of the phrase "casual, brief, and innocent absence." Because Congress intended to liberally grant amnesty to illegal aliens who had been residing in the United States for a long time, and because Congress understood that undocumented aliens were fearful and mistrustful of the INS, the court found it "highly unlikely that Congress intended to require such aliens to seek INS permission to leave the country prior to the time their legalization applications were filed." *CSS v. Meese*, 685 F.Supp. at 1156. Moreover, the court ruled that Congress was aware that the phrase "casual, brief, and innocent absence" had an historical meaning which did not include obtaining advance parole. *See CSS v. Meese*, 685 F.Supp. at 1153–1155, 1157–1159. Accordingly, the court found that the INS' regulation improperly limited casual absences to those authorized by advanced parole.

Section 245a.1(g), however, is not the regulation relied upon by the INS to prevent Kasbati's readmission into the United States. The INS regulation at issue here is § 245a.2(m)(1), which states that

> [d]uring the time period from the date that an alien's application establishing prima facie eligibility is reviewed at a Service Legalization Office and the date status as a temporary resident is granted, the alien applicant can only be readmitted to the United States provided his or her departure was authorized under the Service's advance parole provisions.

8 C.F.R. 245a.2(m)(1).

Unlike § 245a.1(g), this regulation has nothing to do with interpreting what constitutes an interruption in an applicant's continuous physical presence. Instead, this regulation addresses the separate concern that aliens not be permitted to pass freely back and forth across the border. While under *CSS v. Meese*, a casual absence without advance parole does not necessarily constitute an interruption in an applicant's physical presence, it may still constitute a departure such that the applicant's return creates an entry.

We recognize that there is some tension between the court's interpretation of a casual absence in *CSS v. Meese* and the regulation prohibiting readmission to aliens who fail to obtain advance parole into the country. In essence, this state of affairs penalizes an alien who does not manage to evade the INS upon reentry, while imposing no consequences upon the alien who makes it back into the country undetected. This tension, moreover, creates an incentive for aliens to evade INS agents, rather than to present themselves for inspection. This tension, however, does not warrant striking down the INS regulation here.

Unlike § 245a.1(g), § 245a.2(m)(1) does not appear to be clearly inconsistent with the statutory purpose of IRCA, even as that purpose is elaborated in *CSS v. Meese*. First, statutes and regulations, and the courts construing them, have historically distinguished between aliens who are present in the United States and aliens who are attempting to enter the country. Most dramatically, aliens who are physically present in the country are subject to deportation proceedings, which carry significant procedural protections, while those at the border are subject to exclusion proceedings. It is not unusual, then, to accord aliens within the country different benefits than those outside our borders.

Additionally, whereas Congress specifically noted that casual absences should not interrupt the continuous physical presence required for a status change, there is nothing to indicate that Congress intended to allow applicants to cross into and out of the country without abiding by any procedural requirements. Moreover, requiring aliens to receive advance parole before leaving the country comports with the INS' responsibility to regulate the comings and goings of aliens and does not violate Congress' intention to prevent casual absences from interrupting the continuity of an alien's physical presence.[11] Accordingly, we de-

---

11. This regulation, however, does undercut Congress' exception for casual absences by prevent-

fer, here, to the INS regulation.[12]

### IV. Conclusion

For the foregoing reasons, we find that there has been an "entry," and, therefore, that Kasbati is properly excludable under the Immigration and Nationality Act. Accordingly, his petition for a writ of habeas corpus is denied. It is so ordered.

ing aliens from returning to the country altogether. However, we note that in invalidating § 245a.1(g), the court in *CSS v. Meese* inferred a particular Congressional concern with the plight of aliens who had not yet applied for a status change, as opposed to those who had already come into contact with the system through means of their applications. The court revealed this concern when it specifically concluded that it was unlikely that Congress intended to require aliens to obtain advance parole *"prior to the time their legalization applications were filed."* 685 F.Supp. at 1156. Because he had already applied for lawful temporary residency, Kasbati does not fall within the ambit of this protection.

12. Although he mentions that all requests for releasing him were denied, it is not clear from the briefs before this Court whether the petitioner, in addition to seeking to terminate the exclusion proceedings against him, has applied for parole into the country. § 1182(d)(5) of the Immigration and Nationality Act allows the Attorney General, in his discretion, to parole detained aliens into the United States "for emergent reasons or for reasons deemed strictly in the public interest." 8 U.S.C. § 1182(d)(5). In implementing this statute, INS regulations pro-

vide for parole of aliens whose continued detention is not in the public interest, provided the individual is not a security or flight risk. *See* 8 C.F.R. § 212.5(a)(2). Here, Kasbati appears to be a good candidate for parole. *See Gutierrez v. Ilchert,* 702 F.Supp. 787 (N.D.Cal.1988) (court found that INS abused its discretion in denying parole to an alien who was gainfully employed, had a family in the United States, and who, once detained at the border, applied for amnesty under IRCA and was prima facie eligible for legalization). Here, Kasbati is in the process of taking exams to become a certified public accountant, and is prima facie eligible for legalization.

We find it troubling to think that a candidate for parole might be precluded from obtaining parole simply because he was *already* an applicant for amnesty at the time he attempted to reenter the country and, therefore, was subject to § 245a.2(m)(1)—which forbids reentry to applicants without advance parole—while a nonapplicant would not be subject to such restrictions. This potentiality suggests that § 245.-a(2)(m) may contradict the Congressional intent underlying other portions of the Immigration and Nationality Act. However, because this issue was not raised in the briefs, we refrain from reaching it.