# MATTER OF CHAVEZ-CALDERON

## In Deportation Proceedings

### A-29489499

### *Decided by Board November 4, 1993*

The decision of the United States Supreme Court in *Rosenberg v. Fleuti*, 374 U.S. 449 (1963), holding that a lawful permanent resident's "brief, casual, and innocent" departure from the United States did not meaningfully interrupt his residence in this country, is inapplicable to aliens who are admitted as lawful temporary residents pursuant to section 210 of the Immigration and Nationality Act, 8 U.S.C. § 1160 (1988 & Supp. IV 1992).

CHARGE:

Order: Act of 1952—Sec. 241(a)(4) [8 U.S.C. § 1251(a)(4)]—Crime involving moral turpitude

ON BEHALF OF RESPONDENT:
Pro se

ON BEHALF OF SERVICE:
Veronica Rubi
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision entered on January 31, 1990, the immigration judge terminated these deportation proceedings on the ground that the respondent was not deportable as charged. The Immigration and Naturalization Service appealed from that decision. The appeal will be sustained and the record will be remanded to the immigration judge.

The respondent is a native and citizen of Mexico who obtained status as a lawful temporary resident of the United States under section 210 of the Immigration and Nationality Act, 8 U.S.C. § 1160 (1988 & Supp. IV 1992). On October 30, 1988, he was admitted to the United States on the basis of his temporary residence in this country after a short trip of less than 24 hours to Mexico. On January 26, 1989, the respondent was convicted of voluntary manslaughter and aggravated assault under the laws of the State of New Mexico. These crimes were committed on November 25, 1988, and as a result the respondent was sentenced to a term of 3 years and 18 months, respectively, such terms to be served concurrently.

On November 21, 1989, the Immigration and Naturalization Service issued an Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien (Form I-221S), charging the respondent with deportability under section 241(a)(4) of the Act, 8 U.S.C. § 1251(a)(4) (1988), as an alien convicted of a crime involving moral turpitude within 5 years of entry and sentenced therefor to a term of imprisonment of 1 year or more.

At the conclusion of a hearing conducted on November 28, 1989, the immigration judge terminated the proceedings on the ground that the respondent's last "entry" into the United States on October 30, 1988, was "brief, casual, and innocent," resulting in a proper application of the so-called "*Fleuti* doctrine," whereby that departure did not constitute an entry under the immigration laws. *See generally Rosenberg v. Fleuti*, 374 U.S. 449 (1963). Since the respondent's prior entry occurred in 1978, the immigration judge concluded that the respondent was not deportable as charged.

On appeal the Service claims that the *Fleuti* doctrine applies only to lawful permanent residents of the United States, not to lawful temporary residents under section 210 of the Act. We agree that the *Fleuti* doctrine does not apply to the latter class of aliens. In *Fleuti*, the United States Supreme Court relied on the definition of "entry" found at section 101(a)(13) of the Act, 8 U.S.C. § 1101(a)(13) (1958). That provision reads in pertinent part:

The term "entry" means any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, *except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary* ....

Section 101(a)(13) of the Act (emphasis added).

In deciding *Fleuti*, the Supreme Court first noted the above exception created in section 101(a)(13) for lawful permanent residents of the United States and its creation due to the ties to this country formed by aliens who have a long-term presence here. The Court therefore held that a lawful permanent resident's brief, casual, and innocent departure from the United States demonstrated a lack of "intent" to meaningfully interrupt his or her residence in this country. *Id.* at 462-63.

*Fleuti* was decided before the creation of lawful temporary residence under section 210 of the Act and hence is not directly applicable to such status. A review of the case law reveals that, in the context of lawful temporary residence under section 245A of the Act, 8 U.S.C.

§ 1255a (1988 & Supp. IV 1992), two courts have considered this issue, with conflicting results. In *Campos v. Smith*, 791 F. Supp. 262 (W.D. Wash. 1991), the court noted that many of the rights and benefits inuring to lawful permanent residents also pertain to temporary residents and held that the *Fleuti* doctrine applied to an applicant for legalization who had inadvertently departed the United States. *Id.* at 265.

In another case, however, a court held that the *Fleuti* doctrine was inapplicable to an applicant for temporary residence under section 245A of the Act who left the United States without first securing advance parole as required by 8 C.F.R. § 245a.2(m)(1) (1992). *Kasbati v. District Director of I.N.S.*, 805 F. Supp. 619 (N.D. Ill. 1992). The court in that case employed a statutory analysis, noting that section 101(a)(13), relied upon in *Fleuti*, and section 101(a)(20), defining lawful permanent resident status, both required "permanent" rather than "temporary" status. *Id.* at 621.

These decisions are not particularly instructive as, first, they concern a different adjustment of status mechanism, and moreover, reach contradictory conclusions on the issue. We would also note that neither decision is binding precedent in the instant case. *See Matter of K-S-*, 20 I&N Dec. 715 (BIA 1993). We accordingly deem it necessary to turn to the statutory language of section 210 of the Act for further analysis.

Section 210 contains several provisions regarding a temporary resident's right to travel to and from, and be employed in, the United States in the same manner as a lawful permanent resident. The sections we find of particular relevance are reproduced below:

(4) AUTHORIZED TRAVEL AND EMPLOYMENT DURING TEMPORARY RESIDENCE.—During the period an alien is in lawful temporary resident status granted under this subsection, the alien has the right to travel abroad (including commutation from a residence abroad) and shall be granted authorization to engage in employment in the United States and shall be provided an "employment authorized" endorsement or other appropriate work permit, in the same manner as for aliens lawfully admitted for permanent residence.

(5) IN GENERAL.—Except as otherwise provided in this subsection, an alien who acquires the status of an alien lawfully admitted for temporary residence ... is considered to be an alien lawfully admitted for permanent residence (as described in section 101(a)(20)), other than under any provision of the immigration laws.

Sections 210(a)(4)-(5) of the Act.

Although the language of section 210(a)(5) above is not perfectly clear, we believe it evidences Congress' intent that aliens granted lawful temporary status under section 210(a)(1) are to be treated as lawful permanent residents under general federal and state law, but not

for purposes of other benefits under the immigration laws.[1] Therefore, while a lawful temporary resident under section 210 of the Act enjoys the same right to work in the United States and freedom to travel abroad as a lawful permanent resident, such alien may not submit immigrant visa petitions under section 203 of the Act, 8 U.S.C. § 1153 (Supp. IV 1992). *See* 8 C.F.R. §§ 210.4(b)(3), (c) (1993). In addition, lawful temporary residents under section 210 may not apply for a waiver of inadmissibility under section 212(c) of the Act, 8 U.S.C. § 1182(c) (Supp. IV 1992), as that form of relief is limited to lawful permanent residents.

We realize that section 210(a)(4) of the Act, read in conjunction with section 210(a)(5), may be viewed as providing the same travel privileges to temporary residents under section 210 as apply to lawful permanent residents, including application of the *Fleuti* doctrine. In this respect, we note that section 210(a)(5) states, "except as otherwise provided in this subsection," temporary residents under section 210 are to be considered lawful permanent residents of the United States, "other than under any provision of the immigration laws." Since section 210(a)(4) authorizes travel abroad for temporary residents in the same manner as for permanent residents, the former must fall under the first clause of section 210(a)(5), since that provision otherwise precludes treating lawful temporary residents as permanent residents under "any provision of the immigration laws," presumably including section 210(a)(4).

Although the above interpretation is not unpersuasive, we do not believe that section 210(a)(4) reflects Congress' intent to apply the *Fleuti* doctrine to temporary residents under section 210 for several reasons. First, in enacting section 210 and its fellow provisions in the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359, Congress was familiar with the concept of a "brief, casual, and innocent" departure and specifically used that phrase in crafting several exceptions to residence and physical presence requirements, as well as in "overturning" a decision by the United States Supreme Court. *See, e.g.,* section 244(b)(2) of the Act (incorporating *Fleuti* rule into context of suspension of deportation, held inapplicable in *INS v. Phinpathya,* 464 U.S. 183 (1984)); *see also* sections 245A(a)(3)(B), (b)(1)(B)(ii), (b)(3)(A), (g)(2)(A) of the Act. Had Congress intended that "brief, casual, and innocent" departures not be

---

[1] This conclusion finds further support in the relevant legislative history of section 210 of the Act, which reflects congressional concern that aliens employed in agricultural operations not become "indentured" in that employment. *See* H.R. Rep. No. 682(I), 99th Cong., 2d Sess. 51, 83-85 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5649, 5655, 5687-89 (discussing abuses in the *Bracero* program of the 1960's).

considered entries on the part of aliens afforded lawful temporary residence under section 210 of the Act, the language of section 210(a)(4) could have clearly so stated.

Second, a crucial distinction exists between temporary residents under section 210 of the Act on the one hand, and aliens eligible for adjustment under section 245A, lawful permanent residents, and applicants for suspension of deportation on the other. All members of the latter classes possess some form of long-term residence in the United States and concomitant ties to this country, a concern which was foremost in the Supreme Court's crafting of the *Fleuti* doctrine. Aliens who adjust their status under section 210 of the Act, by contrast, need to establish only the performance of 90 man-days of seasonal agricultural services in the United States during a 12-month period ending on May 1, 1986. *See* section 210(a)(1)(B) of the Act; 8 C.F.R. § 210.3(a) (1993). We do not believe that the language of section 210(a)(4) of the Act, without more, dispenses with the preferential treatment previously provided only to aliens with long-term residences in this country. *Cf. Campos v. Smith, supra* (holding that lawful temporary residents under section 245A of the Act possess similar equities as lawful permanent residents).[2]

For the foregoing reasons, we conclude that section 210(a)(4) of the Act does not confer *Fleuti* benefits on aliens lawfully admitted for temporary residence under that provision. Instead, we believe that the statutory language of section 210(a)(5) should be read as precluding the treatment of lawful temporary residents under section 210 of the Act as "lawful permanent residents" under section 101(a)(20) of the Act, since the latter provision constitutes part of "the immigration laws" for purposes of section 210(a)(5). As the *Fleuti* decision relies on the statutory language of section 101(a)(20), it follows that the rationale of that case cannot be applied to lawful temporary residents under section 210 of the Act. Therefore, while free to travel to and from the United States, such aliens do not enjoy the benefits of the *Fleuti* doctrine. The immigration judge accordingly erred in terminating these deportation proceedings and the record will be remanded for further proceedings.

---

[2]The legislative history of the Immigration Reform and Control Act of 1986 reflects strong opposition to section 210 by several members of the House Judiciary Committee reporting the bill to Congress, on the ground that section 210 afforded unduly generous immigration benefits to aliens with only a limited amount of time in the United States. *See* H.R. Rep. No. 682(I), 99th Cong., 2d Sess. 209-13, 219-20, *reprinted in* 1986 U.S.C.C.A.N. 5649, 5746-49, 5754-56 (comments of Reps. Mazzoli, Lungren, and Sensenbrenner). While the provision was eventually enacted despite these concerns, it is clear that Congress was aware of the distinction between aliens adjusting under section 210 of the Act and other, long-term, resident aliens.

**ORDER:**    The immigration judge's order terminating these deportation proceedings is vacated.

**FURTHER ORDER:**    The record is remanded to the immigration judge for further proceedings in accordance with the foregoing opinion.