**Lucy Ko YAO, Petitioner,**

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.**

**No. 91–70675.**

United States Court of Appeals,
Ninth Circuit.

Submitted April 16, 1993 *.

Decided Aug. 11, 1993.

Mildred Harris, San Francisco, CA, for petitioner.

Karen Fletcher Torstenson, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, DC, for respondent.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

Before: GOODWIN, HUG and FLETCHER, Circuit Judges.

FLETCHER: Circuit Judge:

Lucy Ko Yao, a native of the Philippines and citizen of the Republic of China, entered the United States as a nonimmigrant visitor in June 1985 authorized to stay for six months. On September 27, 1988 she applied for adjustment of status as a special agricultural worker ("SAW") pursuant to 8 U.S.C. § 1160. The next day the INS apprehended her and charged her with deportability for overstaying her visa, 8 U.S.C. § 1251(a)(2) (1988), and failing to comply with its conditions by accepting employment, 8 U.S.C. § 1251(a)(9) (1988). At her deportation hearing, Yao denied the deportation charges, moved to terminate the deportation proceedings based on her pending application for legalization, and requested that the charges be reinstated only in the event of denial of her application. The immigration judge ("IJ") denied Yao's motion to terminate the proceedings, and, finding her deportable, entered an order of deportation. On appeal, the Board of Immigration Appeals ("BIA" or "Board") concluded that clear and convincing evidence supported the charge of deportability and that the immigration judge was not obliged to terminate the deportation proceedings or to hold them in abeyance. Yao does not challenge the finding of deportability, appealing only the IJ's failure to terminate proceedings. She argues that the decision not to terminate deportation proceedings pending the outcome of her application for legalization violated her equal protection rights under the Fifth and Fourteenth Amendments. She requests that we direct that her deportation order be withdrawn and deportation proceedings against her terminated until the legalization proceedings are completed.

We have jurisdiction to hear this appeal under 8 U.S.C. § 1105a(a)(1) (Immigration and Nationality Act). We review constitutional claims de novo. *United States v. Savinovich,* 845 F.2d 834, 839 (9th Cir.), *cert.*

*denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). We deny the petition for review.

## I.

The Immigration Reform and Control Act of 1986 ("IRCA" or "the Act"), Pub.L. No. 99–603, 100 Stat. 3359 (1986), allows aliens in the United States illegally to apply for legalization of their immigration status either as temporary agricultural workers, 8 U.S.C. § 1160, or, providing they have resided continuously in the country since 1982, as permanent residents, 8 U.S.C. § 1255a. The IRCA establishes a seven-year program for the adjustment and admission of qualified agricultural workers depending on the seasonal labor needs of American growers of perishable commodities. To be eligible for the program, an alien must have applied for adjustment between June 1, 1987 and November 30, 1988 and must establish that she is otherwise admissible to the United States as an immigrant. She must also demonstrate that she has resided in the United States and has performed "seasonal agricultural services" for at least ninety workdays during the twelve-month period ending on May 1, 1986. 8 U.S.C. § 1160(a)(1)(B). Under the Act, the application is lodged with a local "Legalization Office" of the INS where an interviewing officer makes the determination that the application is "nonfrivolous" and, if "nonfrivolous," recommends approval or denial. 8 U.S.C. § 1160(d)(2). Final review and decision is made by one of four regional processing facilities and is subject to appeal to the Administrative Appeals Unit. 8 U.S.C. § 1160(e)(2)(A); 8 C.F.R. § 103.-3(a)(1)(iii). An alien granted temporary residence under the SAW program is ultimately eligible for admission as a permanent resident. *See* 8 U.S.C. § 1160(a)(2); *see also* 2 Charles Gordon & Stanley Mailman, *Immigration Law and Procedure,* §§ 53.01–53.02 (rev. ed. 1992) [hereinafter Gordon & Mailman].

## II.

A successful amnesty applicant will not be deported unless her temporary residence status is terminated under 8 C.F.R. § 210.4(d).

So long as her application is "nonfrivolous," the applicant may not be deported until a final legalization determination is made. 8 U.S.C. § 1160(d)(2)(A); 8 C.F.R. § 210.-2(c)(4)(iv). Having lodged a "nonfrivolous" application, petitioner would have us hold that no deportation proceedings may be initiated until and unless legalization is denied. Neither the Act nor the requirements of equal protection mandate such a holding.

## A. The Statute

■ The IRCA provides that during the pendency of an alien's legalization application the "alien (A) may not be excluded or deported." 8 U.S.C. §§ 1160(d)(2)(A), 1255a(e)(2)(A). Any deportation order entered is automatically stayed under this provision. 8 C.F.R. § 210.2(c)(4)(iv); *Martinez–Montoya v. INS*, 904 F.2d 1018, 1020 (5th Cir.1990) (interpreting § 1255a(e)(2)(A)); *Campos v. Smith*, 791 F.Supp. 262, 264 n. 1 (W.D.Wash.1991) (same). While an applicant may not be deported, no statutory or regulatory provision bars the initiation of deportation proceedings or precludes the entry of a deportation order. The order simply may not be executed unless and until an adverse legalization determination is made and is final. *See Matter of Juarez*, Int.Dec. 3154, 8 (BIA 1991) (noting in dicta that the provision against premature deportation "does not preclude the entry of an exclusion or deportation order"); *see also Ruginski v. INS*, 942 F.2d 13, 14 (1st Cir.1991) (final order of deporta-

tion entered prior to denial of alien's application for legalization under § 1255a).

■ On the other hand, Section 1160(d) does not "plainly provide[ ] only for stays of deportation for aliens who are awaiting determinations on their applications" as the Service asserts. Resp.Br. at 10. The statute is silent as to whether adjudication of deportation may proceed in the waiting period. No Congressional intention favoring one course or the other may be inferred from a provision that bars deportation. Nor does a regulation implying that a stay automatically applies to any deportation order against an alien having filed a nonfrivolous application suggest that a stay is the exclusive administrative scheme.[1] As a matter of statutory authority and administrative discretion, the INS is free to decide not to commence deportation proceedings against a class of people who may be eligible to remain in the United States.[2] Dicta to the contrary in *Matter of Juarez* is erroneous.[3]

The INS chose to commence deportation proceedings against Yao. It opposed her motion to terminate. As the BIA points out, the IJ was not empowered to terminate or suspend proceedings once initiated. *See Lopez–Telles v. INS*, 564 F.2d 1302, 1304 (9th Cir.1977).

## B. Equal Protection

Petitioner Yao argues that even if initiation of deportation proceedings while her application for legalization was pending were

---

1. The only reference to a stay is in the implementing regulation. That regulation does not confine the meaning of the statutory provision but simply clarifies that frivolous applicants for legalization will not get the benefit of an automatic stay. This accords with the limitation directly required by the statute.

   (iv) Deportation is not stayed for an alien subject to deportation and removal under the INA, notwithstanding a claim to eligibility for SAW status, unless that alien has filed a nonfrivolous application.

   8 C.F.R. § 210.2(c)(4)(iv); *see also* 8 U.S.C. § 1160(d)(2); Gordon & Mailman, § 53.02[2][d] & n. 203 (describing "nonfrivolous" limitation as a "tradeoff" for liberal eligibility requirements).

2. In 1988 the denial rate for SAW applications was less than ten percent. Gordon & Mailman, § 53.02[1][a] & n. 2.

3. The decision erroneously states that Section 1160(d) "provides only for a stay of the execution of an exclusion or deportation order." *Matter of Juarez*, Int. Dec. 3154 at 8. The language of the statute does not suggest that the INS's implementation options are limited in this manner. The Board held that Section 1160(d) applied to aliens awaiting the legalization determination, not to aliens subject to termination of their legalized status. Petitioner Juarez was not an applicant. He had been granted temporary resident status and had committed a deportable offense after receiving amnesty as a temporary agricultural worker. He argued that Section 1160(d) protected him against the execution of the deportation order entered as a result of this deportable offense. We note that the BIA need not have reached any conclusion about the mechanics of deporting applicants.

permitted by the Act, it violates her equal protection rights. Neither the IJ nor the Board had authority to consider her constitutional challenge. *Legalization Assistance Project v. INS*, 976 F.2d 1198, 1203–04 & n. 6 (9th Cir.1992). We do have the jurisdiction to consider her constitutional claims. *Id.* at 1203 & n. 4.

Yao contends that the INS commits a constitutional violation in initiating deportation proceedings against aliens applying for legalization as agricultural workers, but not against aliens applying for legalization as long-term continuous residents. She states (and the Government does not deny) that "Section 210" applicants are treated differently than "Section 245A" applicants.[4] For the purposes of discussion, we accept Yao's allegations as true.[5] While both classes of aliens have been extended the privilege of applying for legalization under the Amnesty Act (IRCA), they are subjected to different deportation timetables upon denial. Because SAW applicants have been found deportable prior to the legalization decision, the stay against deportation is lifted the day a final determination to deny their application is made. Long-term resident applicants, against whom no deportation proceedings have been initiated, may remain in the country until deportation proceedings have run their course and a deportation order is entered and final. Members of both classes of illegal aliens may or may not be legalized and may or may not be deported depending on the merits of their applications,[6] but one class is allowed more time prior to deportation—whatever time is required for deportation proceedings to be commenced and finalized—while the other has the threat of imminent deportation hanging overhead during the application period and is faced with immediate deportation upon denial of legalization.

If Yao's statement of the equal protection violation is stripped to a minimum, she contends that the INS has adopted a policy which favors one class of applicants and disadvantages another.[7] Long-term resident aliens do not live under the shadow of a final deportation order; alien agricultural workers do. One alien has the benefit of "borrowed time" (pending the completion of deportation proceedings), while another might be required to leave on very short notice. If such a policy exists, the special deprivations it inflicts on SAW applicants are the added burdens of defending against deportability; the attendant anxiety such proceedings inflict; the threat of immediate deportation without time to settle their affairs for those whose applications are denied. While denied SAW applicants lose their authorization to work, we cannot say that they do not have an interest in remaining in the community for as many months as deportation proceedings might allow.[8] *See* Harold Hongju Koh,

---

4. Sections 210 and 245A of the Act are codified under 8 U.S.C. §§ 1160, 1255a.

5. To the extent Yao makes allegations at one point in her brief that the Government may in fact deport SAW applicants during the application period, we suggest she overstates the case. Neither the statute nor the regulations support these contentions. 8 U.S.C. §§ 1160(d)(2)(A), 1255a(e)(2)(A). Yao has not been deported. We cannot conceive that the INS would deport anyone with a pending nonfrivolous application. Accordingly we do not address this contention.

6. Individuals in each class of aliens may be eligible for discretionary relief.

7. If in fact the INS does initiate deportation proceedings only against SAW applicants, the policy is not reflected in the statutes or regulations.

8. Upon a denial of legalization, the temporary work authorization provided under Sections 1160(d)(2)(B) and 1255a(e)(2)(B) to both classes of aliens is revoked. *Cf. Truax v. Raich*, 239 U.S. 33, 41, 36 S.Ct. 7, 10–11, 60 L.Ed. 131 (1915) ("it requires no argument to show that the right to work for a living in the common occupations of the community is the very essence of personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure"). There are interests besides earning a living that a deportable alien might have, including extra time with friends and family and sufficient time to settle affairs. *Cf.* Peter Gruman, Note, *The Procedural Due Process Rights of Legalization Applicants Under the Immigration Reform and Control Act of 1986: These are the Procedures that Try Men's Souls*, 39 Syracuse L.Rev. 1381, 1390–91 (1988) ("the protectable liberty interests recognized by the Supreme Court in deportation cases are the freedom to stay, live, and work in this country, as well as the right to rejoin the immediate family, 'a right that ranks high among the interests of the individual'"). In recognizing Yao's *interest*, we do not suggest it amounts to a right. *See infra* at 321.

*Equality with a Human Face: Justice Blackmun and the Equal Protection of Aliens,* 8 Hamline L.Rev. 51, 83 (1985) (arguing for heightened sensitivity to "the real-life impact" of equal protection decisions).

■ The INS does not challenge the truth of petitioner's contention that this policy exists. It responds narrowly to Yao's argument, noting that the cases she cites are not on point and concluding that "the equal protection argument that petitioner has attempted to construct is absolutely irrelevant to her case." Resp.Br. at 11. We do not agree. If this policy *is* in effect, Yao may challenge it "as applied." *See Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (challenging neutral city ordinance as applied to Chinese laundry owners); *see also* James A. Kushner, *Government Discrimination: Equal Protection Law and Litigation,* §§ 3.02, 3.03 (rev. ed. 1992) [hereinafter Kushner]. That Yao admittedly cites irrelevant precedent,[9] and at times incorrectly frames the equal protection violation allegedly at stake,[10] does not render the core claim "irrelevant." Only if there is no such policy, a point the INS fails to confirm, is the equal protection clause of the Fifth and Fourteenth Amendments irrelevant.[11] We have held that INS regulations violate equal protection if they treat similarly situated groups differ-

ently without any rational basis for doing so. *Legalization Assistance Project,* 976 F.2d at 1211–1212. Yao correctly points out that SAW applicants and long-term resident applicants equally desire their illegal status adjusted to legal status. Both are benefited by the same Act promulgated to legalize eligible applicants of both descriptions. Both are fundamentally similarly situated because they are illegal aliens, and are subject to the same ultimate fate of deportation if they fail in their legalization claims.

### (1) *Standard of Review*

"Unless a statute provokes 'strict judicial scrutiny' because it interferes with a 'fundamental right' or discriminates against a 'suspect class,' it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose." *Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 457–58, 108 S.Ct. 2481, 2487, 101 L.Ed.2d 399 (1988).[12] No fundamental right is at stake here. Nor does Yao belong to a suspect class. Under *Legalization Assistance Project,* 976 F.2d at 1211 & n. 26, we conclude that the discriminatory policy which Yao complains of is subject only to a rational

---

9. *Matter of Medrano,* Int. Dec. 3138 (BIA 1991), and *Matter of Juarez,* Int. Dec. 3154 (BIA 1990) concern different statutorily authorized procedures for terminating and deporting aliens who have been legalized under the two amnesty programs. *See* 8 U.S.C. §§ 1160(a)(3), 1255a(b)(2), 8 C.F.R. §§ 210.4(d), 245a.2(u). At best, Yao identifies an equal protection violation in respect to legalized aliens who, subsequent to adjustment of status, have had their legalization under one of the programs terminated. She has no standing to bring this claim, and we find her reliance on the cases, albeit as illustrations of her own claim, misplaced. *See Matter of Juarez,* Int. Dec. 3138 at 8 (provisions relevant to applicants for legalization inapplicable to legalized aliens contesting the procedure for terminating their status and deportation).

One indication that this policy is not in effect, or at least not uniformly so, is the case law on staying of deportation orders against long-term resident applicants. Only two cases have been published. *Martinez–Montoya,* 904 F.2d at 1020; *Campos,* 791 F.Supp. at 264 n. 1 (W.D.Wash. 1991).

10. *See supra* note 5.

11. There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from the deprivation of life, liberty, or property without due process of law. Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection.
*Mathews v. Diaz,* 426 U.S. 67, 77, 96 S.Ct. 1883, 1890, 48 L.Ed.2d 478 (1976); *see also Reno v. Flores,* —— U.S. ——, ——, 113 S.Ct. 1439, 1444, 123 L.Ed.2d 1 (1993) (noting partial summary judgment granted on the "equal-protection claim that the INS had no rational basis for treating alien minors in deportation proceedings differently from alien minors in exclusion proceedings").

12. *See also* Kushner at § 4.03 ("[i]n cases other than those presenting fundamental rights or the special classes of protected groups referred to as suspect classifications, practices are upheld unless found to be *arbitrary* or, alternatively, *standardless*") (emphasis in original).

basis analysis. Applying that standard of review her claim fails.

## (2) *Rational Basis*

Because the Government considered Yao's equal protection challenge irrelevant we do not have the benefit of its articulation of the reasons that might justify treating long-term resident applicants differently from SAW applicants. One justification might be the difference in the eligibility requirements. *See* Gordon & Mailman, at § 53.02[1][b] (describing unique benefits of SAW legalization). While SAW applicants need prove residence in the United States for but ninety workdays, long-term resident applicants must establish continuous physical presence since 1982, a period approaching five years. 8 U.S.C. § 1255a(a)(2). SAW applicants are not required to establish a history of ties to the country. Durational qualifications are imposed only on Section 1255a applicants. The INS might not initiate deportation against aliens who have stronger durational ties to the United States, because they have greater claim to a longer period in which to settle their affairs and reconcile friends and family to their departure. *Mathews v. Diaz,* 426 U.S. 67, 82–83, 96 S.Ct. 1883, 1893, 48 L.Ed.2d 478 (1976) ("it is unquestionably reasonable for Congress to make an alien's eligibility depend on both the character and the duration of his residence"). Such a reason is not "wholly irrational."

Taking petitioner Yao's allegation that the INS discriminates between Section 1160, (SAW applicants), and Section 1255a, (long-term resident applicants), in the initiation of deportation proceedings to be true, we find petitioner's constitutional claim cognizable, but without merit.

The petition for review is therefore **DENIED.**