**Manuel AGUILERA–MEDINA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 96–71121.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 1997.

Decided March 9, 1998.

Robert B. Jobe, San Francisco, California, for petitioner.

Linda S. Wernery, U.S. Department of Justice, Washington, D.C., for respondent.

Before: BROWNING, PREGERSON, and HAWKINS, Circuit Judges.

PER CURIAM:

In 1985, Manuel Aguilera–Medina ("Aguilera") entered the United States from Mexico. In 1987, his status was adjusted to that of a lawful temporary resident under the Special Agricultural Workers ("SAW") program, codified in Section 210 the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1160. In July 1990, Aguilera went to Mexico to attend his child's baptism, returning on July 25. In December 1990, his status was adjusted to that of a lawful permanent resident. On July 13, 1992, Aguilera pled guilty to a misdemeanor charge that he aided and abetted a family member and three friends in entering the United States illegally by driving them from Calexico, California to Porterville, California. On July 14, 1993, the INS issued an order to show cause why Aguilera should not be deported for aiding the illegal

entry of an alien into the United States within five years of his 1990 entry.[1]

Aguilera admitted the underlying offense but denied deportability on the grounds that he entered the United States in 1985–more than five years before the offense. Aguilera argued his July 25, 1990 return to the United States was not an entry for purposes of INA § 241(a)(1)(E)(i) because it followed "a brief, casual, and innocent departure" and therefore fell within the "intent" exception to "entry" recognized by the Supreme Court in *Rosenberg v. Fleuti*, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963). However, the Board of Immigration Appeals ("BIA") had previously held, in *Matter of Chavez–Calderon*, 20 I. & N. Dec. 744, 1993 WL 495141 (BIA 1993), that *Fleuti* did not apply to aliens admitted as lawful temporary residents pursuant to the SAW program. Applying *Matter of Chavez–Calderon*, the Immigration Judge held that since Aguilera did not have the benefit of *Fleuti*, his 1990 return was an entry, his 1992 conviction for aiding and abetting occurred within five years of that entry, and he was therefore deportable. After finding Aguilera ineligible for relief in the form of voluntary departure, suspension of deportation, or waiver under INA § 212(a)(6), the Immigration Judge ordered Aguilera deported.

Aguilera appealed, arguing that the Immigration Judge should have applied the *Fleuti* exception to his departure and return in July 1990. The BIA summarily affirmed the Immigration Judge's decision. This petition for review followed.

The plain language of subsection (a)(4) of INA § 210, establishing the SAW program, extends the travel and employment rights enjoyed by permanent legal residents to aliens holding lawful temporary resident sta-tus under the SAW program. Subsection 210(a)(4) provides:

> During the period an alien is in lawful temporary resident status ... the alien has the right to travel abroad ... and shall be granted authorization to engage in employment in the United States ... in the same manner as for aliens lawfully admitted for permanent residence.

8 U.S.C. § 1160(a)(4). Since lawful temporary resident aliens may travel abroad "in the same manner as" permanent resident aliens, the most straightforward interpretation of subsection 210(a)(4) is that if a permanent resident's return from a brief excursion does not count as an "entry," then neither should that of a lawfully admitted temporary resident.

As noted, however, the BIA held in *Matter of Chavez–Calderon* that the *Fleuti* doctrine does not apply to aliens admitted as SAW temporary residents pursuant to Section 210. *See Matter of Chavez–Calderon*, 20 I. & N. Dec., at 748. Notwithstanding the clear language of (a)(4), the BIA concluded, based on the language of subsection 210(a)(5) and its assessment of certain policy considerations, that Congress intended that SAW temporary residents "be treated as lawful permanent residents .under general federal .and state law, but not for purposes of other benefits under the immigration laws."[2] *Matter of Chavez–Calderon*, 20 I. & N. Dec., at 746–47.

Subsection 210(a)(5) reads:

> Except as otherwise provided in this subsection, an alien who acquires the status of an alien lawfully admitted for temporary residence ... is considered to be an alien lawfully admitted for permanent residence ... other than under any provision of the immigration laws.

8 U.S.C. § 1160(a)(5). The BIA acknowledged that the grant of travel and employ-

---

1. The INS charged Aguilera with deportability pursuant to INA § 241(a)(1)(E)(i) which provides:

   Any alien who (prior to the date of entry, at the time of any entry or within five years of the date of any entry) knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter the United States in violation of law is deportable. 8 U.S.C. § 1251(a)(1)(E)(i).

2. In support of its analysis, the BIA cited the legislative history of section 210, particularly, .Congress' concern about the potential exploitation of seasonal laborers. *See* H.R. Rep No. 682(I), 99th Cong., 2d Sess. 51, 83–85 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5649, 5655, 5687–89 (discussing the abuses in the Bracero program of the 1940s and 1950s). The BIA interpreted this legislative history to reflect an exclusive concern for worker protection.

ment rights to lawful temporary residents announced in subsection 210(a)(4) fell within the "[e]xcept as otherwise provided" clause of subsection 210(a)(5). It maintained, however, that the *Fleuti* doctrine could not be extended to temporary residents without running afoul of the final exclusionary clause of subsection 210(a)(5)-"other than under any provision of the immigration laws."

The BIA's interpretation is not only contrary to the plain meaning of INA § 210(a)(4), but also misconstrues INA § 210(a)(5). Subsection 210(a)(5) begins with the phrase "[e]xcept as otherwise provided in this subsection." Since "this subsection" includes all of INA § 210(a), including subsection (a)(4), the latter is expressly excluded from the remaining provisions of subsection 210(a)(5). The BIA's contrary interpretation rests on the unlikely assumption that Congress in subsection (a)(5) took away the very travel rights it had just unequivocally given to SAW participants in subsection (a)(4). Aguilera's interpretation, on the other hand, harmonizes the two provisions by recognizing that subsection (a)(5) states a general rule, with such exceptions as are provided in the section itself, one of which is the exception stated in subsection (a)(4).[3]

The BIA offered several reasons to justify disregarding the unambiguous language of subsection 210(a)(4). The BIA asserted that Congress did not mean to extend the full travel rights of lawful permanent residents to aliens admitted under the SAW program. *See Matter of Chavez–Calderon*, 20 I. & N. Dec., at 747–48. The BIA reasoned that because *Fleuti* was decided before Congress created the temporary status held by Aguilera, Congress would have included *Fleuti's* talismanic "brief, casual, and innocent" phrase had it wished to extend *Fleuti* benefits to SAW workers-as it did elsewhere.[4] However, repetition of the specific *Fleuti*

language was unnecessary because the definition of "entry" clearly extends *Fleuti* benefits to permanent legal residents and equally clearly extends those benefits to temporary legal residents under SAW. Separate language was required to carve out exceptions to the continuous physical presence requirement in the instance cited by the BIA, but the definition of "entry" in INA § 101(a)(13), applicable to SAW participants, expressly incorporates the benefits of *Fleuti*. Because Congress decreed that lawful temporary residents were to be treated as permanent legal residents for the purposes of travel, and that lawful permanent residents were to have the benefit of *Fleuti*, Congress necessarily extended the benefits of the *Fleuti* exception to SAW participants.[5] Had Congress simply wished to permit SAW participants to travel abroad without visas, as the government construes section 210(a)(4), a much narrower exception would have been drawn.

The BIA further suggested that Congress intended to distinguish between temporary and permanent residents based on their length of residence and concomitant ties to the country, noting that a SAW temporary resident must only demonstrate that he performed ninety days of seasonal agricultural services in the United States during a twelve-month period in order to adjust his status. *See* INA § 210(a)(1)(B), 8 U.S.C. § 1160(a)(1)(B); *Matter of Chavez–Calderon*, 20 I. & N. Dec., at 748. But not all legal permanent resident aliens achieve their status through prolonged residence. *See, e.g.*, 8 U.S.C. § 1153 (allocation of immigrant visas for family-sponsored and employment-based immigrants). Indeed, a lawful permanent resident whose status arose from an offer of employment is protected by the *Fleuti* doctrine regardless of whether he has ever lived in the United States or has any ties to this country. *See* INA § 101(a)(13) (defining "en-

---

**3.** Adjustment to permanent residence under subsection 210(a)(2) is clearly another exception. *See* INA § 1160(a)(2).

**4.** *Id.* at 747–48; *see, e.g.*, INA § 244(b)(2), 8 U.S.C. § 1254(b)(2) ("brief, casual, and innocent" absences); INA § 245A(a)(3)(B), 8 U.S.C. § 1255a(a)(3)(B) ("brief, casual, and innocent" absences); INA § 245A(b)(3)(A), 8 U.S.C. § 1255a(b)(3)(A) ("brief and casual trips"

abroad); INA § 245A(g)(2)(A), 8 U.S.C. § 1255a(g)(2)(A) ("brief and casual trips" abroad).

**5.** The rule of *Mendoza v. INS*, 16 F.3d 335, 337 (9th Cir.1994), that *Fleuti* applies only when Congress has provided the requisite directive, is therefore satisfied.

try"). The *Fleuti* doctrine functions to protect important rights enjoyed by permanent legal residents. *See, e.g., Campos v. Smith,* 791 F.Supp. 262, 265 (W.D.Wash.1991). There is no indication Congress intended to confer equal travel rights on SAW participants, yet withhold *Fleuti*'s protection.[6]

Moreover, Congress intended the SAW program provisions for the automatic adjustment to permanent resident status as an inducement to foreign agricultural employees to come to this country to bring in the harvest. *See* INA § 210(a)(2), 8 U.S.C. § 1160(a)(2). This adjustment of status is "not a discretionary program; any alien meeting the ... requirements will become a lawful permanent resident alien of the United States with full preference petitioning rights." [7]

Congress has broad authority to distinguish temporary from permanent legal residents; however, the plain language of subsection 210(a)(4), the overall adjustment scheme of the SAW program, and the legislative history confirm Congressional intent to confer equivalent travel rights upon lawful temporary residents.

Because Congress has directed that lawful temporary and permanent residents be treated equally with respect to travel rights, we hold that the *Fleuti* doctrine extends to lawful temporary residents in the SAW program on the same terms as to lawful permanent residents. We therefore remand with instructions to the Immigration Judge to determine, in keeping with this decision, whether the *Fleuti* doctrine applies to Aguilera's July 25, 1990 return to the United States.

PETITION GRANTED. REMANDED FOR FURTHER PROCEEDINGS.

---

**6.** The BIA also notes that the legislative history indicated strong opposition to section 210 on the grounds that aliens with only brief residence in the United States reaped disproportionate benefits. *See* H.R.Rep. No. 682(I), 99th Cong., 2d Sess. 209–13, 219–20 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5649, 5746–49, 5754–56; *see also Matter of Chavez–Calderon,* 20 I. & N. Dec., at 749 n. 2. This argument only confirms that Congress was aware that it was extending substantial

benefits to temporary residents, yet nonetheless decided to do so.

**7.** H.R. Rep No. 682(I), 99th Cong., 2d Sess. 51, 83–85 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5649, 5690.