[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**JUNE 5, 2003**
**THOMAS K. KAHN**
**CLERK**

————————————————

Nos. 01-16153 and 02-13474

————————————————

INS Docket No. A23-524-000

MARIE THERESE HALIM ASSA'AD,

Petitioner,

versus

UNITED STATES ATTORNEY GENERAL,
IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

————————————————

Petitions for Review of Final Orders of
the Board of Immigration Appeals

————————————————

**(June 5, 2003)**

Before ANDERSON, BIRCH and BARKETT, Circuit Judges.

ANDERSON, Circuit Judge:

This case comes to us on petition for review of an order of exclusion by the Immigration and Naturalization Service ("INS"). Petitioner, Marie Therese Halim Assa'ad-Faltas ("Faltas"), argues that she was improperly placed in exclusion proceedings rather than deportation proceedings. While Faltas had an application for legalization pending under § 245A(a) of the Immigration and Nationality Act,[1] 8 U.S.C. § 1255a(a), she departed the United States with advance parole from the INS. Following her return, Faltas's legalization application was denied, her parole status revoked, and exclusion proceedings against her commenced. Faltas argues that her return to the United States following a brief departure while her legalization application was pending did not constitute an "entry" and did not interrupt her status or deprive her of the right to deportation proceedings, rather than exclusion proceedings.

## I. BACKGROUND

A. Factual Background

Faltas is a native and citizen of Egypt. She entered the United States in 1979 as an exchange visitor.[2] Although her authorized stay expired in May of 1982,

---

[1]    Pub. L. No. 82-414, 66 Stat. 163 (1952) (codified as amended at 8 U.S.C. § 1101 et seq.) ("INA" or "Act").

[2]    INA § 101(a)(15)(J), 8 U.S.C. § 1101(a)(15)(J).

Faltas remained in the country until September of 1983, when she departed for Egypt. Three months later, she re-entered the United States as a temporary visitor for pleasure[3] authorized to stay for six months. Faltas remained in the country for nearly six years.

On June 22, 1988, Faltas filed an application for adjustment of status under INA § 245, 8 U.S.C. § 1255. She applied to have her status adjusted to that of an alien lawfully admitted for permanent residence as the unmarried daughter of a lawful permanent resident. This application was denied on October 27, 1988, for working without employment authorization[4] and for failure to satisfy the admissibility requirement of INA § 245(a).[5] Having been admitted as an exchange visitor in 1979, Faltas was ineligible for an immigrant visa or for permanent residence status until she either resided in Egypt for at least two years following

---

[3] 8 U.S.C. § 1101(a)(15)(B).

[4] An alien is ineligible for adjustment under § 245 if she "continues in or accepts unauthorized employment prior to filing an application . . . or . . . is in unlawful immigration status on the date of filing the application . . . ." INA § 245(c), 8 U.S.C. § 1255(c) (1989).

[5] 
"The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General . . . to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed."

INA § 245(a), 8 U.S.C. § 1255(a) (2002).

her stay in the United States or obtained a waiver of this requirement.[6]

On May 4, 1988, Faltas filed an application for legalization under INA § 245A(a), 8 U.S.C. § 1255a(a). This application was denied on January 18, 1990. The denial of her application was affirmed on administrative appeal on February 17, 1992. On September 29, 1989, while Faltas's legalization application was pending, Faltas was granted advance authorization for parole. Faltas departed the United States for Canada on October 27, 1989, returning on October 29.

In June of 1992, Faltas filed another application for adjustment of status under § 245 as the unmarried daughter of a United States citizen, her mother having naturalized. The INS has no record of this application, apparently having lost it.

## B. Procedural History

On November 5, 1991, the INS commenced exclusion proceedings against

---

[6] "No person admitted under section 101(a)(15)(J) [the exchange visitor provision] . . . shall be eligible to apply for an immigrant visa, or for permanent residence . . . until it is established that such person has resided and been physically present in the country of his nationality or his last residence for an aggregate of at least two years following departure from the United States: Provided . . . [t]hat . . . the Attorney General may, upon the favorable recommendation of the Director, waive such two-year foreign residence requirement in any case in which the foreign country of the alien's nationality or last residence has furnished the Director a statement in writing that it has no objection to such waiver in the case of such alien."

INA § 212(e), 8 U.S.C. § 1182(e).

Faltas. She was charged with being excludable at the time she returned from her trip to Canada for lack of valid travel and entry documents. See former INA § 212(a)(20), 8 U.S.C. § 1182(a)(20) (1989).[7] The immigration judge ("IJ") terminated the exclusion proceedings on December 13, 1995, finding that Faltas's 1989 departure was brief, casual, and innocent. Relying on Joshi v. INS, 720 F.2d 799 (4th Cir. 1983), the IJ concluded that Faltas was entitled to deportation proceedings. The IJ also concluded that the employment authorization extended to Faltas constituted a de facto extension of her parole status. On December 20, 1996, the Board of Immigration Appeals ("BIA" or "Board") vacated the termination order. The BIA held that the regulations relied upon in Joshi pertained to applicants for adjustment of status and, regardless, that those regulations were superseded by subsequent amendment. The BIA also held that work authorization does not constitute an extension of parole status.

On remand, the IJ found Faltas excludable under INA § 212(a)(7)(A)(i)(I).[8] The only relief from exclusion Faltas sought was based on her earlier applications for adjustment of status and legalization. The IJ concluded that he did not have

_____

[7]       This ground is now found at INA §§ 212(a)(7), 8 U.S.C. § 1182(a)(7).

[8]       "[A]ny immigrant at the time of application for admission -- who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this Act . . . is excludable." INA § 212(a)(7)(A)(i)(I) (1996).

jurisdiction to review the denials of Faltas's legalization and adjustment applications and ordered her exclusion on March 24, 1998. The BIA affirmed on August 27, 2001, and denied an application for reconsideration on January 7, 2002.

Faltas appeals the order of exclusion and the denial of reconsideration. She argues that the BIA erred in treating her as an alien seeking admission on October 29, 1989, and subjecting her to exclusion, rather than deportation, proceedings.

## II. STANDARD OF REVIEW

Because the exclusion proceedings against Faltas were commenced before April 1, 1997, and the final exclusion order was entered more than thirty days after September 30, 1996, our jurisdiction is governed by the transitional rules found in § 309(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009, as amended ("IIRIRA") (reprinted in 8 U.S.C.A. § 1101 (historical notes)). See Al Najjar v. Ashcroft, 257 F.3d 1262, 1276-77 (11th Cir.), reh'g, en banc, denied, 275 F.3d 1085 (2001). Under the IIRIRA transitional rules, we apply the provisions of former INA § 106, 8 U.S.C. § 1105a (1996), except for subsection (b) of that section (providing for habeas corpus review of exclusion orders), as well as INA § 242(g), 8 U.S.C. § 1252(g) (exclusive jurisdiction provision). See IIRIRA §§ 306(c)(1), 309(c)(4); Al Najjar, 257 F.3d at

6

1277 n.4.

Our review is based on the administrative record. We will uphold findings of fact if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INA § 106(a)(4), 8 U.S.C. § 1105a(a)(4) (1996); Al Najjar, 257 F.3d at 1283-84. We review questions of law de novo, McNary v. Hatian Refugee Ctr., Inc., 498 U.S. 479, 493, 111 S.Ct. 888, 897 (1991), with appropriate deference to the BIA's reasonable interpretation of the Act. INS v. Aguirre-Aguirre, 526 U.S. 415, 424, 119 S.Ct. 1439, 1445 (1999). We will defer to the BIA's construction of the Act "if the statute is silent or ambiguous with respect to the specific issue before [us]" and the BIA's interpretation "is based on a permissible construction of the statute." Id. (quotations and citations omitted). We defer to the INS's interpretation of its own regulations unless that interpretation is "plainly erroneous or inconsistent with the regulation." Auer v. Robbins, 519 U.S. 452, 461, 117 S.Ct. 905, 911 (1997) (quotation and citation omitted).

## III. REGULATORY OVERVIEW

A. Parole

Before IIRIRA took effect, the procedure by which an alien was removed

from the United States turned on the physical location of the alien.[9]  Aliens

physically present in the United States were subject to deportation proceedings.

See, e.g., former INA § 241(a), 8 U.S.C. § 1251(a) (1996) (providing grounds for

deporting "[a]ny alien in the United States").  Aliens arriving at the border were

subject to exclusion proceedings.  See, e.g., former INA § 212(a), 8 U.S.C. §

1182(a) (1996) (providing grounds for excluding aliens "from admission into the

United States").[10]

An exception to this geography-based system was parole.  Congress has

granted the Attorney General the discretion to

> "parole into the United States temporarily . . . any alien applying for
> admission to the United States, but such parole shall not be regarded
> as an admission of the alien and when the purposes of such parole
> shall, in the opinion of the Attorney General, have been served the
> alien shall forthwith return or be returned to the custody from which
> he was paroled and thereafter his case shall continue to be dealt with
> in the same manner as that of any other applicant for admission to the
> United States."

INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A) (2002).  The Attorney General has

---

[9]     The substantial differences between deportation and exclusion proceedings are noted in Landon v. Plasencia, 459 U.S. 21, 25-27, 103 S.Ct. 321, 325-26 (1982).

[10]     The distinction now turns on status rather than location.  All aliens are subject to removal proceedings, INA § 240, 8 U.S.C. § 1229a, but an alien in the United States who has been admitted is subject to deportability grounds, see INA § 237(a), 8 U.S.C. § 1227(a), while an alien who has not, regardless of his or her location, is subject to inadmissibility grounds, INA § 212(a), 8 U.S.C. § 1182(a).

established regulations delegating and implementing this grant of discretion.  See 8

C.F.R. § 212.5.  In addition to establishing various criteria for granting parole to

arriving aliens, § 212.5 allows the INS to grant advance authorization for parole to

an alien who has not yet, but will, travel to the United States without a visa.  8

C.F.R. § 212.5(f).  Commonly called "advance parole," this administrative device is

described by the BIA as

> "a mechanism by which a district director can, as a humanitarian
> measure, advise an alien who is in this country, but who knows or
> fears that he will be inadmissible if he leaves and tries to return, that
> he can leave with assurance that he will be paroled back into the
> United States upon return . . . ."

In re G-A-C-, 22 I. &. N. Dec. 83, 88 (BIA 1998) (en banc).  When the conditions

under which parole is granted expire or parole is otherwise revoked, the paroled

alien is subject to exclusion proceedings.  INA § 212(d)(5)(A), 8 U.S.C. §

212(d)(5)(A) ("parole shall not be regarded as admission of the alien"); 8 C.F.R. §

212.5(e)(2) (upon termination of parole, the alien "shall be restored to the status

that he or she had at the time of parole"); Sale v. Haitian Ctrs. Council, 509 U.S.

155, 159, 133 S.Ct. 2549, 2552 (1993) ("Aliens arriving at the border, or those who

are temporarily paroled into the country, are subject to an exclusion hearing . . . .");

Leng May Ma v. Barber, 357 U.S. 185, 188, 78 S.Ct. 1072, 1074 (1958); Jean v.

Nelson, 727 F.2d 957, 969 (11th Cir. 1984) (en banc), aff'd, 472 U.S. 846, 105

9

S.Ct. 2992 (1985) (Parolees "can claim no greater rights or privileges under our laws than any other group of aliens who have been stopped at the border."); Matter of Torres, 19 I. & N. Dec. 371, 373 (BIA 1986) ("It is well settled that when an alien is paroled into the United States pursuant to section 212(d)(5) of the Act . . . he does not gain the additional protections prescribed for deportation proceedings.").

B.  Legalization

Faltas applied for legalization under INA § 245A, 8 U.S.C. § 1255a, enacted as part of the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359 (1986) ("IRCA").  IRCA was "a major statutory response to the vast tide of illegal immigration that had produced a 'shadow population' of literally millions of undocumented aliens in the United States."  McNary, 498 U.S. at 481, 111 S.Ct. at 890.  IRCA provided immigration amnesty for certain classes of unlawful residents, coupled with stiffened immigration enforcement.  Id. at 481-83, 111 S.Ct. at 891.  INA § 245A(a) is one of these amnesty programs.  It requires the Attorney General to adjust the status of an applicant to that of an alien lawfully admitted for temporary residence if the alien meets four requirements.  These requirements are timely application, continuous unlawful residence, continuous physical presence, and admissibility as an immigrant.  INA § 245A(b) provides for

10

the later adjustment of the alien's status to that of an alien lawfully admitted for permanent residence.

To encourage unlawful residents to apply for legalization, applications are confidential and information provided in a legalization application cannot be used as the basis for deportation proceedings. INA § 245A(c)(4), (c)(5). Until "a final determination on [a legalization] application has been made," an applicant who has demonstrated prima facie eligibility for legalization cannot be deported, § 245A(e)(2)(A), and is entitled to employment authorization, § 245A(e)(2)(B).

The immigration status of an eligible applicant will be adjusted to that of an alien lawfully admitted for temporary residence. INA § 245A(a) ("The Attorney General *shall* adjust the status of an [eligible] alien . . . .") (emphasis added). A temporary resident is entitled to apply for permanent resident status under § 245A(b)(1); is authorized to travel temporarily abroad under § 245A(b)(3)(A); and is entitled to work authorization under § 245A(b)(3)(B). Temporary residents obtain immigration benefits for their immediate families, as well; any spouse and unmarried children of the alien are protected from deportation on certain grounds, and may also obtain work authorization. See § 301 of the Immigration Act of 1990 ("1990 Act"), Pub. L. No. 101-649, 104 Stat. 4978, 5029 (1990). A limited number of immigrant visas were also made available for these immediate family members,

11

see § 112 of the 1990 Act.

The immigration status of a successful applicant under § 245A(b)(1) will be further adjusted to that of a lawful permanent resident. INA § 245A(b)(1) ("The Attorney General *shall* adjust the status of any [eligible] alien" to that of a lawful permanent resident) (emphasis added). These aliens, who have twice demonstrated eligibility for the amnesty provisions extended by IRCA, are afforded the most protected status under the immigration laws, and may eventually be eligible for naturalization. See INA § 316; see also Kim v. Ziglar, 276 F.3d 523, 528 (9th Cir. 2001) (noting that the benefits of lawful permanent residence include the right to work, without limitation, in the United States and to reside permanently in the country). Many grounds of exclusion (now inadmissibility) and deportation (now removability) are waivable only for lawful permanent residents or the for the relatives of citizens and lawful permanent residents. See generally INA §§ 212(a) (grounds of inadmissibility), 237(a) (grounds of removability). Until 1996, lawful permanent residents with seven consecutive years of domicile returning from a voluntary departure could be readmitted even if excludable under most grounds of the Act, though this provision was repealed by IIRIRA. See former INA § 212(c), 8 U.S.C. § 1882(c) (repealed September 6, 1996). The INS can waive travel document requirements for lawful permanent residents returning from a temporary

absence.  See INA § 211(b); 8 C.F.R. § 211.4.

INA § 245A(f)(3) requires the Attorney General to establish "a single level of administrative appellate review" of denials of applications for legalization. Administrative appeal is made to the Administrative Appeals Unit ("AAU").  8 C.F.R. § 245a.2(p).  Immigration courts do not have jurisdiction to review the denial of an application for legalization.  In re Singh, 21 I. & N. Dec. 427, 433 (BIA 1996) (en banc).  Limited judicial review of a denial is provided in INA § 245A(f)(4)(A).[11]  Judicial review is only allowed in the course of reviewing a deportation order.  There is no provision for judicial review of a denied application in reviewing an exclusion order.  See Espinoza-Gutierrez v. Smith, 94 F.3d 1270, 1278 (9th Cir. 1996).

## C.  The *Fleuti* Doctrine

In the pre-IIRIRA era, important immigration provisions were keyed to an alien's "entry."  Entry was defined as

> "any coming of an alien into the United States . . . except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for purposes of the immigration laws if . . . his departure . . . was not intended or reasonably to be expected by him . . . ."

---

[11]   "There shall be judicial review of such a denial only in the judicial review of an order of deportation under [former] section 106 [8 U.S.C. § 1105a (1996)]."  INA § 245A(f)(4)(A), 8 U.S.C. § 1255a(f)(4)(A).

See former INA § 101(a)(13), 8 U.S.C. § 1101(a)(13) (1996). An alien's entry had consequences for the procedures used to remove the alien from the country and on the substantive grounds of deportability forming the basis of a removal. See, e.g., former INA § 241, 8 U.S.C. § 1251 (1996), subparagraphs (a)(1)(A) (alien deportable if excludable at time of entry) and (a)(1)(B) (alien deportable if entered without inspection).

The Supreme Court construed the intent exception to the definition of entry in Rosenberg v. Fleuti, 374 U.S. 449, 83 S.Ct. 1804 (1963). Fleuti, a permanent resident alien, visited Mexico for a couple of hours. Following his return, the INS initiated deportation proceedings against him on the ground that he was deportable by reason of having been excludable at the time of his entry.[12] The Court held that this deportability ground did not apply, because Fleuti did not "enter" upon his return from Mexico. An intentional departure was construed as requiring "an intent to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence." Id. at 462, 83 S.Ct. at 1812. The Court held that "an innocent, casual, and brief excursion by a resident alien beyond this country's borders may not have been 'intended' as a departure." Id. Return from such an

---

[12] Former INA § 241(a)(1), 8 U.S.C. § 1251(a)(1) (1956). The excludability ground was being "affected with psychopathic personality." See former INA § 212(a)(4), 8 U.S.C. § 1182(a)(4) (1956). This ground of excludability was not an independent ground of deportability.

14

excursion would not be an "entry."

## IV. DISCUSSION

Faltas admits that an alien paroled into the United States is generally subject to exclusion proceedings when parole is revoked. She contends, however, that, whether or not she obtained advance parole, return to the United States after a "brief, casual, and innocent departure" while a legalization application is pending does not constitute an "entry" under former INA § 101(a)(13). She relies on the Fleuti doctrine, which she contends is codified in INA § 245A(a)(3)(B).

### A. Legalization Applicants and the *Fleuti* doctrine

Faltas argues that INA § 245A(a)(3)(B) codifies the Fleuti doctrine for legalization applicants. Because the IJ found that her trip to Canada was "brief, casual and innocent," she contends that she did not "enter" the United States on October 29, 1989, and therefore was not subject to exclusion proceedings. See Plasencia, 459 U.S. at 28, 103 S.Ct. at 327 ("only 'entering' aliens are subject to exclusion"). Faltas relies heavily on the decision of our sister Circuit in Espinoza-Guiterrez v. Smith, 94 F.3d 1270 (9th Cir. 1996). That court held that § 245A(a)(3)(B) is ambiguous with respect to its effect on the "entry" of legalization applicants, Espinoza, 94 F.3d at 1275-76, but that the INS has reasonably

15

interpreted the statute as modifying "entry." Id. at 1276.

1.  The Statute

The first question we ask in construing this statute is whether "the statute is silent or ambiguous with respect to the specific issue." Aguirre-Aguirre, 526 U.S. at 424, 119 S.Ct. at 1445. The specific issue is whether Congress created an intent exception to the entry definition for legalization applicants.

When construing the meaning of a statute, we begin with the language Congress has chosen and assume that the words used are intended to carry their ordinary meaning. INS v. Phinpathya, 464 U.S. 183, 189, 104 S.Ct. 584, 589 (1984). When Congress uses language with a well-known legal meaning, however, we generally presume that it was aware of and intended the statute to incorporate that understood meaning. Cf. Lorillard v. Pons, 434 U.S. 575, 583, 98 S.Ct. 866, 871 (1978); Morissette v. United States, 342 U.S. 246, 263, 72 S.Ct. 240, 250 (1952).

(a) Plain Language

The statute allowing certain classes of unlawfully present aliens to adjust to temporary resident status is framed in terms of eligibility. See INA § 245A(a) (an alien's status shall be adjusted "if the alien meets the following requirements:").. The four eligibility requirements are: (1) timely application, (2) continuous

16

unlawful residence since November 6, 1982, (3) continuous physical presence since November 6, 1986, and (4) admissibility as an immigrant. The third requirement, the continuous physical presence requirement, requires the alien to "establish that the alien has been continuously physically present in the United States since November 6, 1986." § 245A(a)(3)(A).[13] Subparagraph (a)(3)(B) allows an for an exception to the requirement: "[a]n alien shall not be considered to have failed to maintain continuous physical presence in the United States for the purposes of subparagraph (A) by virtue of brief, casual, and innocent absences from the United States." The plain language of this subparagraph expressly limits the effect of the exception to the eligibility requirement of subparagraph (a)(3)(A). The applicant "shall not be considered to have failed to maintain *continuous physical presence* in the United States *for purposes of subparagraph (A)*" because of a brief, casual, and innocent absence. (Emphasis added). The statute speaks

_____

[13]

(A) In general. The alien must establish that the alien has been continuously physically present since November 6, 1986.
(B) Treatment of brief, casual, and innocent absences. An alien shall not be considered to have failed to maintain continuous physical presence in the United States for purposes of subparagraph (A) by virtue of brief, casual, and innocent absences from the United States.
(C) Admissions. Nothing in this section shall be construed as authorizing an alien to apply for admission to, or to be admitted to, the United States in order to apply for adjustment of status under this subsection.

INA § 245A(a)(3).

17

only in terms of eligibility for legalization, and makes no reference to entry.[14]

In § 245A(b)(3)(A), Congress addressed the issue of travel abroad by applicants for legalization who have successfully completed the legalization process under § 245A(a) and have already attained lawful temporary resident status.[15] That subparagraph directs the Attorney General to devise regulations allowing a legalized alien to return from travel abroad during his or her period of temporary residence under certain circumstances, namely, "after such brief and casual trips abroad as reflect an intention on the part of the alien to adjust to lawful

---

[14]     Indeed, if the statutory language in § 245A(a)(3)(B) does *not* limit the application of the Fleuti factors to eligibility requirements, it is difficult to imagine how Congress could have so limited them. One way to emphasize this point is to assume that the chosen language is ambiguous, then attempt to draft statutory language that would be unambiguous. For example, the statute could say, "for purposes of subparagraph (a) *and for no other purpose*," or "for purposes of subparagraph (a) *but not section 101(a)(13)*." This would be even clearer, but the added language only emphasizes a restriction already present. A reasonable reader would understand these additional limitations to be redundant. This indicates that the chosen statutory language is unambiguous.

[15]     INA § 245A(b)(3) provides, in relevant part:

Authorized travel and employment during temporary residence. During the period an alien is in lawful temporary resident status granted under subsection (a) -- (A) Authorization for travel abroad. The Attorney General shall, in accordance with regulations, permit the alien to return to the United States after such brief and casual trips abroad as reflect an intention on the part of the alien to adjust to lawful permanent resident status under paragraph (1) and after brief temporary trips abroad occasioned by a family obligation involving an occurrence such as the illness of death of a close relative or other family need.

permanent status . . . ."[16] This subparagraph is also incorporated as part of the eligibility requirements for adjustment to lawful permanent resident status under § 245A(b)(1)(B) (continuous residence requirement). See § 245A(b)(1)(B)(ii) (referring to subparagraph (b)(3)(A)). So, like subparagraph (a)(3)(B), subparagraph (b)(3)(A) addresses the effect of certain absences on eligibility for adjustment of status. Unlike subparagraph (a)(3)(B), however, subparagraph (b)(3)(A) expressly addresses authorization for travel abroad, or, more accurately, authorization for the INS to allow the alien to return after an absence. This express authorization for travel abroad and return for lawful temporary residents, and the absence of similar authorization for unlawfully present aliens who have merely applied for legalization, is a significant indication that Congress intended to bestow travel privileges only on lawful temporary residents. Cf. Brown v. Gardner, 513 U.S. 115, 120, 115 S.Ct. 552, 556 (1994); Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 184, 114 S.Ct. 1439, 1451-52 (1994) (where Congress demonstrates awareness of an issue by expressly addressing it in one provision, silence on the issue in a similar provision is

---

[16] The implementing regulations are found in 8 C.F.R. § 245a.2(m)(2). The INS considers relevant the duration of the absence (30 days or less); the aggregate duration of absences (90 days or less following approval of legalization application); whether the departure was under deportation proceedings; and whether the alien possesses a temporary residence card, presents him- or herself for inspection, and is otherwise admissible. Such an alien "may be admitted to the United States on return."

19

presumed to be intentional); INS v. Cardoza-Fonseca, 480 U.S. 421, 432, 107 S.Ct. 1207, 1213 (1987) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quotation and citation omitted).

Thus, we believe that the exception for "brief, casual, and innocent absences" in § 245A(a)(3)(B) is expressly limited to the continuous physical presence eligibility requirement. It does not affect the generally applicable definition of what constitutes an "entry" into the United States under former INA § 101(a)(13). We reject Faltas's argument that her return to the United States following her brief absence was not an "entry."

(b) Espinoza

Faltas's argument relies upon the Ninth Circuit case, Espinoza-Guitterez v. Smith, 94 F.3d 1270 (9th Cir. 1996). Consistent with the position advanced by Faltas, the Ninth Circuit held that a legalization applicant who returns from a brief, casual, and innocent trip abroad does not effect an "entry" upon returning to the United States, and is not subject to exclusion proceedings upon his or her arrival. Although the Ninth Circuit acknowledged that subparagraph (a)(3)(B) applies "[o]n its face . . . only [to] the continuous physical presence requirement," id. at 1274,

20

and although it acknowledged that only successful legalization applicants, i.e., only lawful temporary residents, were expressly authorized to travel abroad and return, id. at 1275 (quoting § 245A(b)(3)(A)), the Espinoza court nevertheless held that the statute was ambiguous, relying primarily on its conclusion that the phrase "brief, casual, and innocent absences" indicated an intent to apply the Fleuti doctrine to legalization applicants, or, in the language of Espinoza, an intent that subparagraph (a)(3)(B) would "operate as a border-crossing mechanism," and "apply at the border." Id. ("Historically, this language [from Fleuti] has been viewed as a border-crossing mechanism.") Having determined that the statute was ambiguous with regard to the scope of subparagraph (a)(3)(B), the court construed INS regulations as interpreting the provision as a border-crossing mechanism, or as applying "to legalization applicants stopped at the border." Id. at 1271. Having concluded that the INS construed subparagraph (a)(3)(B) as applying the Fleuti doctrine to legalization applicants stopped at the border, the court then held that INS regulations requiring advance parole authorization for brief, casual, and innocent absences were invalid, id. at 1277, because they were inconsistent with "the Fleuti doctrine's purpose to circumvent entry procedures when aliens have not intended to disrupt their United States residency." Id.

For the reasons that follow, we respectfully disagree with the reasoning of

the Ninth Circuit in Espinoza. First, we do not believe that Espinoza correctly read the Supreme Court decision in Fleuti. In this regard, it is important to look at the precise holding of Fleuti. The Court was construing the statutory definition of "entry" in former INA § 101(a)(13).[17] That definition was , for most aliens, very strict: an entry was "*any* coming of an alien into the United States." (Emphasis added.) Congress provided a limited exception, applicable only to lawful permanent residents:

> [E]xcept that an alien having a *lawful permanent residence* in the United States shall not be regarded as making an *entry* into the United States for the purposes of the immigration laws if the alien proves . . . that his departure . . . was not intended or reasonably to be expected by him . . . or was not voluntary.

Former INA § 101(a)(13), 8 U.S.C. § 1101(a)(13) (amended by IIRIRA) (emphasis added). Specifically, the Supreme Court was concerned with the construction of the phrase, "[a] departure . . . not intended" by the departing alien. The Court did

---

[17]     For convenience, that definition is again set forth:

The term "entry" means any coming of an alien into the United States . . . whether voluntary or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure . . . was not intended or reasonably to be expected by him . . . : Provided, That no person whose departure from the United States was occasioned by deportation proceedings, extradition, or other legal process shall be held to be entitled to such exception.

This is the same entry definition applicable at the time of Faltas's return from Canada.

22

not cut an exception to the entry doctrine from whole cloth; the intent exception to the entry doctrine was provided by statute. The exception, expressly relating to the definition of "entry" and expressly limited to lawful permanent residents, was construed to include an absence made without "intent to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence." Fleuti, 374 U.S. at 462, 83 S.Ct. at 1812. "[A]n innocent, casual, and brief excursion by a resident alien" might not have been so intended. Id. The generally applicable definition of entry, as *any* coming into the United States, was left without exception.

The incorporation of the Fleuti factors into INA § 245A(a)(3)(B) (and we agree that these factors were incorporated) does not imply that the application of those factors will have the same result (i.e., a modification of the entry doctrine) in a statutory provision expressly limited to legalization eligibility as the application of those factors in an entirely different statutory provision, which did address the "entry" concept and which was expressly limited to the entry of lawful permanent residents. To conclude otherwise is to equate the factors involved in an inquiry with the purpose of the inquiry. The Fleuti Court proposed those factors for the purpose of determining whether a lawful permanent resident effects an entry under § 101(a)(13); Congress borrowed those factors in § 245A(a)(3)(B) for the purpose

23

of determining whether a legalization applicant remains eligible for legalization.

Second, we respectfully believe that, in addition to over-reading Fleuti, Espinoza under-estimates the degree to which the statutory structure sheds light on Congressional intent.  As discussed above, we believe that to interpret subparagraph (a)(3)(B) as applying to entry as well as to eligibility is inconsistent with the plain language of the statute, which expressly limits the applicability of the Fleuti factors to the eligibility requirement of continuous physical presence. We also believe that to interpret subparagraph (a)(3)(B) as extending the intent exception to the entry doctrine to legalization applicants would be inconsistent with the general structure of § 245A, which addresses eligibility for adjustment of status separately from the extension of immigration benefits, and which extends escalating immigration benefits to aliens who are able to demonstrate satisfaction of increasingly restrictive eligibility requirements.

The provisions of § 245A specifically applicable to applicants for adjustment to temporary resident status are subsections (a) and (e).  Subsection (a) addresses eligibility for adjustment to temporary resident status, while subsection (e) addresses immigration benefits for those applicants.  The benefits extended are work authorization and protection from deportation; travel authorization is not one of the benefits extended in this subsection.  See INA § 245A(e).

The provision of § 245A specifically applicable to applicants for adjustment to permanent resident status (i.e., aliens who have *successfully* attained temporary resident status under subsection (a)) is subsection (b). Subsection (b) is subdivided into paragraph (1), addressing eligibility for adjustment to permanent resident status; paragraph (2), addressing revocation of that status for certain reasons; and paragraph (3), addressing immigration benefits for temporary residents. Those benefits are temporary work authorization, subparagraph (b)(3)(B), and travel authorization, subparagraph (b)(3)(A).

So, § 245A addresses applicants for adjustment to temporary residents and applicants for adjustment to permanent residence in parallel fashion by setting out eligibility requirements separately from immigration benefits. The one time the statute makes the same provision applicable to both immigration benefits and eligibility, it does so explicitly. See § 245A(b)(1)(B)(ii) (travel authorized under subparagraph (b)(3)(A) will not disrupt the alien's continuous residence). Construing subparagraph (a)(3)(B) as an implicit modification of the entry doctrine, as Faltas urges, would be inconsistent with an organizational structure that separates eligibility requirements from immigration benefits, inconsistent with the explicit treatment of travel authorization for lawful temporary residents, and, as discussed below, inconsistent with the statute's extension of increasingly generous

25

immigration benefits as an alien satisfies progressively restrictive eligibility requirements.

Section 245A provides escalating immigration benefits to aliens who are able to demonstrate satisfaction of increasingly restrictive eligibility requirements. For example, not all applicants for adjustment to temporary resident status are entitled to work authorization and a stay of deportation; only applicants who demonstrate prima facie eligibility for legalization under subsection (a). See § 245A(e). These benefits terminate when a final determination on the alien's legalization application is made; aliens unable to demonstrate eligibility are deportable, while aliens who can demonstrate eligibility have their status adjusted. Successful applicants can now apply for lawful permanent resident status under subsection (b). The eligibility requirements for this adjustment are timely application between the nineteenth and thirty-third months following adjustment to temporary resident status; continuous residence following adjustment to temporary resident status; admissibility as an immigrant; and demonstration of basic citizenship skills. See § 245A(b)(1). During the period of lawful temporary residence, the alien is entitled to work authorization and travel authorization. The travel authorization is limited, however; temporary residents are permitted to return, "in accordance with regulations," only after "such brief and casual trips

26

abroad as reflect an intention on the part of the alien to adjust to lawful permanent resident status" and after trips taken for emergent family reasons. See § 245(b)(3)(A). The applicable regulations require the returning temporary resident to stay within per-absence and aggregate time limitations, to present a temporary residence card, to present for inspection, and to demonstrate admissibility.

If subsection (a)(3)(B) created an entry exception for applicants for adjustment to temporary residence, applicants returning from brief, casual, and innocent absences would not face per-absence or aggregate time limits, would not need travel documents, would not need to present themselves for inspection, and would not need to demonstrate admissibility, because they would not be "entering." Their return would not have to be "in accordance with regulations." Applicants for temporary resident status would have a broader right of travel than would temporary residents. This benefit would be extended without even the requirement that the applicant demonstrate prima facie eligibility for adjustment, which is not a limitation found in subparagraph (a)(3)(B) (as it is in subsection (e)).

Interpreting subparagraph (a)(3)(B) as limited to eligibility for legalization, however, avoids these inconsistencies. Under our interpretation, the organizational structure of § 245A remains consistent in the way it addresses applicants for adjustment to temporary resident status and applicants for adjustment to permanent

27

resident status. Each category of applicants must demonstrate certain eligibility requirements, set forth in one part of the statute, and are entitled to certain immigration benefits, addressed separately by the statute. When a provision is applicable to both eligibility requirements and immigration benefits, the statute says so explicitly. Restricting subparagraph (a)(3)(B) to eligibility is also consistent with the statute's provision for escalating immigration benefits. Mere applicants for adjustment to temporary resident status are, like other unlawfully present aliens, entitled to no benefits. Applicants demonstrating prima facie eligibility for immigration amnesty are entitled to work authorization and a stay of deportation pending adjudication of their applications. Successful applicants are entitled to work authorization and have limited permission to travel abroad while they pursue adjustment to permanent resident status. In sum, when travel abroad and return has been expressly authorized for lawful temporary residents not only as an eligibility requirement, but also as a travel benefit, and when that benefit has not been bestowed on unlawfully present aliens who have merely applied for legalization, it would be inconsistent with this organizational structure to nonetheless imply a travel benefit (indeed, an even more generous travel benefit) for unlawfully present aliens.

28

We see nothing unreasonable or harsh[18] in this more limited construction of the "brief, casual, and innocent absences" exception. Under the reasonable regulations of the INS, a legalization applicant returning from a brief, casual, and innocent trip abroad will be paroled into the country, thus permitting the completion of the legalization process. See 8 C.F.R. § 245a.2(l)(2), (m)(1). Section 245A(a)(3)(B) fully serves its purpose by ensuring that "brief, casual, and innocent absences" do not interrupt the applicant's continuous physical presence, and thus do not defeat the applicant's pursuit of legalization. With respect to all successful applicants for legalization, their brief, casual and innocent trips abroad will have no adverse consequences; even if the alien were subject to exclusion proceedings upon his or her return, the successful applicant's status will be adjusted and the slate wiped clean. Thus, with respect to all aliens in the class targeted by Congress in the immigration amnesty program, the congressional purpose is fully accomplished.[19]

---

[18] Before an alien unlawfully residing in the United States applies for legalization, it is clear that the alien's return following any absence would be an "entry." We see nothing harsh about continuing this treatment for such aliens pending resolution of their applications, and for such aliens who, as here, have completed the legalization process but were unable to demonstrate their membership in the class of aliens to whom Congress intended to extend immigration amnesty.

[19] The case of an eligible alien whom the INS refused to permit to return to the United States or refused to permit an opportunity to continue to pursue a pending legalization application might present a different question, and would give us pause. See, e.g., Kasbati v. District Director, 805 F.Supp. 619, 623 n.12 (N.D.Ill. 1991) (noting this problem). See also

We do not think it implausible that Congress intended a legalization applicant's "brief, casual, and innocent" absence to affect only the question of continuous physical presence and not "entry." A very natural, indeed the most plausible, reading of the statute is that Congress merely intended the phrase as a shorthand for evaluating whether there was a meaningful interruption in the alien's continuous physical presence. Fleuti itself, and its progeny, considered the contours of what constitutes a departure that is meaningfully interruptive of the alien's status. For example, courts have considered how long an absence may be considered brief, Itzcovitz v. Selective Service Local Bd., 447 F.2d 888, 839-94 (2d Cir. 1971) (permanent resident's three-week trip to Tel Aviv for job training was brief); what purposes behind a departure are innocent, Laredo-Miranda v. INS, 555 F.2d 1242, 1246 (5th Cir. 1977) (though permanent resident's trip to Mexico was for innocent purpose initially, it became meaningfully interruptive when he aided illegal entrants on his return); and whether the hardship to the alien or the alien's family attending a particular outcome are relevant to construing the intent exception, Zimmerman v. Lehman, 339 F.2d 943, 948-49 (7th Cir. 1965)

Fernandes v. McElroy, 920 F.Supp. 428 (S.D.N.Y. 1996) (returning alien's legalization application denied at his exclusion hearing); De Olivera v. INS, 873 F.Supp. 338 (C.D.Cal. 1994) (legalization applicant was unable to obtain advance parole due to insufficient INS administrative resources and was placed in exclusion proceedings immediately upon return from an absence; no indication that her parole status was extended to allow adjudication of her application). Such is not the case before us, however, and we express no view on the proper resolution of such a case.

30

(considering permanent resident's length of residency and family ties); and, if so, how relevant, Lozano-Giron v. INS, 506 F.2d 1073, 1077-80 (7th Cir. 1974) (despite nine years of permanent residence, no evidence of significant family, property, or employment ties in the United States). We think this is the sense in which Congress intended the phrase "brief, casual, and innocent absence": that an applicant's absences will be evaluated in this well-understood manner for the purpose directed by Congress -- i.e., for the purpose of determining whether the legalization applicant has satisfied the continuous physical presence requirement.

(c) Conclusion: the Meaning of the Statute

For these reasons, we respectfully disagree with the holding of Espinoza that the adoption in § 245A(a)(3)(B) of the Fleuti factors renders this statute ambiguous with respect to the issue before us: whether a legalization applicant returning from a brief, casual, and innocent absence makes an "entry" under the immigration statutes. Summarizing, we believe that the plain language of subparagraph (a)(3)(B) limits the effect of the "brief, casual, and innocent absences" exception to the continuous physical presence requirement, and we believe that our interpretation is the only one that is consistent with the organizational structure of the statute. We hold that the statute is unambiguous and that subparagraph (a)(3)(B) addresses only the eligibility requirement, and does not affect the

31

definition of "entry" for legalization applicants.[20]

(d)  Faltas's Other Arguments Regarding (a)(3)(B)

Faltas advances several additional arguments in favor of her reading of the statute, all of which are readily rejected.  She argues that the interpretation of the statute she advances is supported by the principles that ambiguity in the immigration statutes be construed in favor of the alien, Cardoza-Fonseca, 480 at 449, 107 S.Ct. at 1222, and that IRCA, a remedial program, ought to be construed liberally.  Cf. Dennis v. Higgins, 498 U.S. 439, 443, 111 S.Ct. 865, 868 (1991) (as a remedial statute, § 1983 "should be liberally and beneficently construed") (internal quotation and citation omitted).  These venerable principles of statutory construction, however, apply only where the statute is ambiguous.  Barnhart v. Sigmon Coal Co., 534 U.S. 438, 461-62, 122 S.Ct. 941, 956 (2002) ("When the words of a statute are unambiguous . . . 'judicial inquiry is complete.'") (citation

---

[20]  In a different, but analogous context, the Second Circuit rejected an argument similar to Faltas's argument.  Patel v. McElroy, 143 F.3d 56 (2d Cir. 1998).  Patel argued that his return to the United States following a brief, casual, and innocent trip did not constitute an entry and, therefore, he should be deemed "already within the United States and properly subject to 'deportation' proceedings and not 'exclusion' proceedings."  Id. at 59.  The court rejected that argument.  Id. ("We disagree.").  Similar to the instant context, the "brief, casual, and innocent" absence exception applied to the continuous physical presence requirement for eligibility for suspension of deportation, former INA § 244(a), 8 U.S.C. § 1254 (repealed by IIRIRA), and did not alter the well-settled definition of "entry."  143 F.3d at 59.  But see Mendoza v. INS, 16 F.3d 335, 336-37 (9th Cir. 1996) (dicta possibly pointing to the contrary, also in the context of suspension of deportation).

omitted).  Finding no ambiguity, we have no opportunity to apply these principles.

Faltas argues that the above interpretation of § 245A(a)(3)(B) is inconsistent with the nature of IRCA as an amnesty program, and specifically conflicts with the prohibition against deporting an applicant on the basis of information obtained from the application found in § 245A(c) and the temporary stay of deportation for legalization applicants required by § 245A(e).

Paragraphs 245A(c)(4) and (5) require the confidentiality of information submitted in a legalization application.  If unlawful residents suspected that they would be detected and deported by voluntarily identifying themselves to the INS, applications for immigration amnesty would obviously be deterred.  See Perez v. INS, 72 F.3d 256, 259 (2d Cir. 1995) (confidentiality provision assures unlawful residents that they will not "come forward only to be snared by the INS") (quotation and citation omitted).  The exclusion proceedings against Faltas were in no way based on information obtained from her legalization application, however.  Her exclusion order is based on her attempted entry on October 29, 1989, without valid travel documents.  The fact that exclusion, rather than deportation, procedures were used is irrelevant to protecting the confidentiality of her application.  Whether legalization applicants are subject to exclusion or deportation upon their return from a brief absence would have no effect on the incentives of unlawful residents

33

to apply.

Our interpretation is also consistent with the temporary stay of deportation. Section 245A(e) provides a temporary stay of deportation for applicants and grants temporary work authorization until the application is approved or denied. Faltas was not ordered excluded until after her application was denied and this denial was affirmed on administrative appeal. See Yao v. INS, 2 F.3d 317, 319 (9th Cir. 1993) (IRCA bars the execution of deportation orders, not the commencement of proceedings, pending resolution of the application). Indeed, she was paroled into the United States in order to continue pursuit of her legalization application, a benefit she would not have received absent IRCA. The procedures used to adjudicate her admissibility in no way diminished the availability of temporary relief from being ordered out of the country pending evaluation of her application for immigration amnesty. In short, the remedial purposes of IRCA would not be served by adopting the interpretation Faltas urges.

Faltas also points to § 1504(c) of the Legal Immigration Family Equity Act Amendments of 2000 ("LIFE Act Amendments"), Pub. L. No. 106-554, 114 Stat. 2763 (2000) (enacting H.R. 5666, 106th Cong.).[21] She contends that this provision

---

[21]

If an alien has obtained lawful permanent resident status under section 1104 of the Legal Immigration Family Equity Act and the alien has an eligible spouse or child who is no longer physically present in the United States, the Attorney General

demonstrates that legalization applicants are treated differently under the immigration law for parole purposes, supporting her argument that legalization applicants are not subject to parole upon return from a brief, casual, and innocent trip. The provision of the LIFE Act Amendments on which Faltas relies, however, simply allows spouses and unmarried children of certain class action members to be paroled into the country without counting against numerical limits on immigration. Nothing in this amendment indicates that the conditions and restrictions of parole do not apply with equal force to aliens so paroled. The benefits of this provision accrue to potential immigrants who would otherwise face exhausted immigration limits, not to the paroled aliens.

2. Agency Construction

Even if we were to conclude that INA § 245A(a)(3)(B) is ambiguous, we would defer to the INS's reasonable interpretation of that provision as limited to eligibility for legalization. Aguirre-Aguirre, 526 U.S. at 424, 119 S.Ct. at 1445. The regulation implementing subparagraph (a)(3)(B) is found in 8 C.F.R. §

shall establish a process under which the eligible spouse or child may be paroled into the United States in order to obtain [certain immigration benefits] . . . . An alien so paroled shall not be treated as paroled into the United States for purposes of section 201(c)(4) of the Immigration and Nationality Act. . . .

LIFE Act Amendments § 1504(c). Section 201(c)(4) of the INA, 8 U.S.C. § 1151(c)(4), requires that parolees who do not depart within 365 days or legalize their status be counted against annual numerical immigration limits.

245a.2(l). The INS considers an absence "brief, casual, and innocent" only if the alien obtains advance parole for the trip, unless the departure was out of the alien's control. § 245a.2(l)(2).[22] See also 8 C.F.R. § 245a.2(m)(1).[23] The provision for advance parole clearly indicates that the INS considers the returning legalization applicant to be seeking entry. The term "parole" has a well-established meaning: that the alien is allowed into the country but remains constructively at the border, seeking admission and subject to exclusion proceedings.[24]

---

[22]

A brief, casual and innocent absence means a departure authorized by the Service (advance parole) subsequent to May 1, 1987 of not more than thirty (30) days for legitimate emergency or humanitarian purposes unless a further period of authorized departure has been granted in the discretion of the district director or a departure was beyond the alien's control.

8 C.F.R. § 245a.2(l)(2).

[23]

"(1) During the time period from the date that an alien's application establishing prima facie eligibility for temporary resident status is reviewed at a Service Legalization Office and the date status as a temporary resident is granted, the alien applicant can only be readmitted to the United States provided his or her departure was authorized under the Service's advance parole provisions contained in § 212.5(f) of this chapter.
"(2) An alien whose application for temporary resident status has been approved may be admitted to the United States upon return as a returning temporary resident provided he or she [meets certain requirements]."

8 C.F.R. § 245a.2(m).

[24]    We note that the Ninth Circuit has interpreted 8 C.F.R. § 245a.2(l)(2) as evidence that the INS construes INA § 245A(a)(3)(B) as creating an "entry" exception for legalization applicants. See Espinoza, 94 F.3d at 1276. The court relied on the language of that regulation defining a brief, casual and innocent absence as "a departure authorized by the Service . . . ." This language, the court reasoned, demonstrates that the INS views § 245A(a)(3)(B) as a "border-crossing mechanism." 94 F.3d at 1276. We think that, because an "absence" necessarily implies

36

Faltas argues that § 245a.2(m) shows that the INS does not consider a returning legalization applicant as entering because it allows an applicant to be "readmitted." The reference to readmission, however, is immediately qualified by the phrase, "provided his or her departure was authorized under the Service's advance parole provisions contained in § 212.5(f) . . . ." Though there is some tension between the characterization of the alien's return as readmission and the requirement of obtaining advance parole, the BIA's decision in <u>Singh</u> demonstrates that the INS does not interpret § 245a.2(m)(1) as creating an "entry" exception. Although the BIA did not address the effect of the language on which Faltas relies, it approved the application of exclusion proceedings to a returning legalization applicant who did not apply for advance parole prior to his departure. The BIA indicated that, had the alien's departure been "brief, casual, and innocent," he

a departure and a return, that is, a border crossing, this language does not address the essential question of what effect that border crossing has on the alien's status. The question is not whether the regulations contemplate a border crossing, but whether the INS construes § 245A(a)(3)(B) as creating an exception to the entry definition. We think the requirement of advance parole strongly suggests that the INS does not; if a legalization applicant were not seeking "entry," there would be no need for parole. The court in <u>Espinoza</u> went on to invalidate 8 C.F.R. § 245a.2(l)(2)'s advance parole requirement as in conflict with the court's perception of the INS's interpretation of the statute, treatment that we think is inconsistent with the court's reliance on that very regulation to demonstrate the INS interpretation. <u>See</u> 94 F.3d at 1277. Contrary to <u>Espinoza</u>, we do not believe that the INS regulations construe the statute as creating an exception to entry. Our interpretation is supported by the regulation's advance parole requirement, and we do not view the obvious border-crossing aspect as speaking to the issue of an entry exception, <u>vel non</u>. Even more significant, the BIA has expressly construed the statute as addressing eligibility and not as revising the definition of entry. See the discussion of <u>In re Singh</u>, 21 I. & N. Dec.427 (BIA 1996) (<u>en banc</u>), below. The <u>Espinoza</u> court was apparently unaware of the <u>Singh</u> decision.

37

would have been eligible for parole through the exercise of prosecutorial discretion described in internal INS guidelines.  Singh, 21 I. & N. Dec. at 433.  The BIA clearly considered the alien to be seeking entry regardless of the character of the absence, which the Board refused to consider because it was relevant only to the alien's eligibility for legalization.  Discussing INA § 245A(a)(3), the Board emphasized the distinction

> between section 245A of the Act, which addresses *eligibility* for temporary resident status, and the concept of *excludability*, which involves an alien's ability to legally enter the United States.  We clearly have no authority to decide whether an applicant, ordered excluded by this Board due to lack of proper documents, may still demonstrate eligibility for temporary resident status . . .  As to excludability, we note that Congress did not create an exception to section 212(a)(7)(A)(i)(I) of the Act [excludability for lack of valid travel documents] . . . when it enacted section 245A of the Act.  *Moreover, the definition of 'entry' set forth at section 101(a)(13) . . . has not been revised . . . .*

Id. at 434 n.8 (emphasis added).  We would defer to this interpretation, which is neither plainly erroneous nor inconsistent with statute or the regulation.  Auer, 519 U.S. at 461, 117 S.Ct. at 911.  Singh interprets the regulations as treating returning legalization applicants as seeking entry.  We hold that this regulatory interpretation of the statute is permissible.

B.  Petitioner's Other Arguments

Faltas's primary argument is that she did not "enter" the country on October

29, 1989.  She advances several other arguments which we will now address.

1.  INA § 245A(d)(2)(A)

Faltas complains that excluding her for lack of valid travel documents contravenes INA § 245A(d)(2)(A).[25]  However, this provision waives the ground of excludability only for the eligibility requirement of admissibility, § 245A(a)(4)(A). It does not give legalization applicants a free pass to cross and re-cross the borders without valid travel documents.  It only allows a legalization application to be approved even though the applicant would be inadmissible for lack of labor certification or valid entry documents.

2.  Notice of the consequences of departure

The adequacy of the notice Faltas received regarding the potential consequences of her 1989 departure does not affect the propriety of exclusion proceedings.  While Faltas argues that she was never notified that accepting advance parole would change her status from an alien in the United States, subject to deportation proceedings, to that of an alien seeking admission, subject to exclusion, the INS is under no duty, constitutional or otherwise, to provide aliens

---

[25]  Section 245A(d)(2)(A) provides:
"In the determination of an alien's admissibility under subsection[] (a)(4)(A) . . . The provisions of paragraphs (5) [labor certification requirements] and (7)(A) [entry document requirements] of section 212(a) shall not apply."

with legal advice on the effects of parole. Balogun v. Attorney General, 303 F.3d 1303, 1312 (11th Cir. 2002). Moreover, parole has a well-established legal meaning.

3. Joshi

Faltas argues that Joshi v. INS, 720 F.2d 799 (4th Cir. 1983), requires the termination of exclusion proceedings against her. In that case, a lawfully admitted nonimmigrant applied for adjustment of status under INA § 245. While his application was pending, he received advance parole to travel to India. After his return, his application was denied and he was placed in exclusion proceedings, where his adjustment application was unreviewable by the immigration judge. He was apparently excluded on the basis of the expiration of his authorized stay as a nonimmigrant. The court held that he was entitled to deportation proceedings. The court in Joshi relied on the regulations in force at that time governing travel by adjustment applicants, which provided that upon an applicant's return from an authorized trip, "the application shall be adjudicated without regard to the departure and absence." 720 F.2d at 801. The court reasoned that the alien was entitled to adjudication of his application for adjustment of status in deportation proceedings before his departure, and was therefore entitled to the same right on his return. Id. at 802. The court also noted that, had the alien been denied

40

admission based on his status as an entering alien upon his return from India, exclusion proceedings would have been appropriate. Id.

The regulation relied upon by the Joshi court has since been amended to explicitly require the application of exclusion proceedings to adjustment applicants paroled into the country following a brief departure. See 8 C.F.R. § 245.2(a)(4)(ii). In any event, the Joshi decision is irrelevant to the disposition of this case. The regulations construed in that case pertained to applicants for adjustment of status. Faltas relies on her status as a legalization applicant, not as an adjustment applicant. She had no adjustment applications pending at the time of her departure.[26]

C. Motion for Reconsideration

Finally, Faltas appeals the BIA's denial of her motion for rehearing. Under 8 C.F.R. § 3.2(a), the decision to grant a motion to reconsider "is within the

---

[26] Joshi also held that the advance parole at issue in that case was a purely administrative procedure not promulgated under the authority of INA § 212(d)(5), 8 U.S.C. § 1182(d)(5) (granting the Attorney General discretion to parole aliens into the United States in certain circumstances). See Joshi, 720 F.2d at 803. We do not believe that holding has any application to the case at bar. Whether or not the (now-superceded) regulation addressed by the Joshi court derived its authority from § 212(d)(5) says nothing with respect to the derivation of the advance parole authority exercised in the instant case pursuant to 8 C.F.R. § 245a.2(l) and (m). The instant regulations expressly refer to the advance parole provisions of 8 C.F.R. § 212.5(f), which in turn was expressly promulgated under the authority of INA § 212(d)(5). See 8 C.F.R. § 212.5(a). This exercise of advance parole authority is not an unreasonable interpretation of the Act. If, or to the extent that, Joshi suggests otherwise, we disagree.

discretion of the Board, subject to the restrictions of this section." We review the BIA's denial of a motion to reconsider for abuse of discretion. Cf. Mejia-Rodriguez v. Reno, 178 F.3d 1139, 1145 (11th Cir. 2001) (denial of motion to reopen under 8 C.F.R. § 3.2(a) reviewed for abuse of discretion). In her motion to reconsider, Faltas essentially argues that the BIA's decision rested on an erroneous interpretation of the law. Based on the foregoing discussion, it is clear the BIA did not abuse its discretion in denying the motion.

## III. CONCLUSION

Because Faltas sought to enter the United States on October 29, 1989, without valid travel documents, she was excludable. When her parole was subsequently terminated, she was properly placed in exclusion proceedings. Accordingly, the petition is

DENIED.[27]

---

[27] Any outstanding motions not expressly addressed in this opinion are denied. Following oral argument, the parties briefed the issue of whether Faltas is ineligible for legalization and excludable/deportable based on the two-year foreign residence requirement, INA §§ 212(e) and 245A(a)(2)(C). This issue is not relevant to the question presented by the petition for review, which is whether the exclusion proceedings were proper. Furthermore, this issue appears relevant only to the merits of Faltas's legalization application. INA § 245A(f)(4)(A) appears to limit our jurisdiction to review the merits of a legalization application to the review of deportation proceedings, and Faltas advances no argument for why we might have jurisdiction to hear her foreign-residence requirement arguments. We therefore decline to address that issue.